**Mamdouh M. HUSSEIN, Plaintiff,**

v.

**THE WALDORF–ASTORIA, Hotel, Restaurant and Club Employees and Bartenders Local # 6, and Carlos Lopez, Defendants.**

**No. 99 Civ. 1652(DC).**

United States District Court,
S.D. New York.

March 30, 2001.

Mamdouh Hussein, Jersey City, NJ, pro se.

Orrick Herrington & Sutcliffe LLP, by Herbert J. Levine, Ruth D. Raisfeld, New York City, for Defendants.

## *MEMORANDUM DECISION*

CHIN, District Judge.

In this case, *pro se* plaintiff Mamdouh Hussein alleges that defendant Hilton Hotels Corporation d/b/a The Waldorf–Astoria (the "Waldorf") discriminated against him on the basis of his religion when it refused to let him work as a banquet waiter when he appeared for work one evening with a beard in violation of hotel rules. Plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

The Waldorf moves for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that plaintiff has failed to establish a prima facie case of religious discrimination under Title VII and that the Waldorf could not have offered him an accommodation without undue hardship. Alternatively, the Waldorf moves to dismiss the complaint on the grounds that plaintiff wilfully failed to comply with his discovery obligations. For the reasons set forth below, defendant's motion for summary judgment is granted. I do not reach the alternative motion to dismiss.

## BACKGROUND

### A. Facts

The following facts are drawn from the record before the Court, which includes the transcript of plaintiff's deposition.[1] For purposes of this motion, all conflicts in the evidence have been resolved in plaintiff's favor.

Hussein, who is Muslim, is a member of the Hotel, Restaurant and Club Employees and Bartenders Union Local # 6 (the "Union"). (Hussein Tr. at 26, 52). Pursuant to a collective bargaining agreement, Hussein works per diem as a "roll call" banquet waiter in the hotel industry. (*See* Compl. ¶¶ 2–4; Hussein Exh. 6). Roll call waiters are not full-time employees of a hotel, but, instead, are employed when a hotel requires additional staff for a particular event. Hotels are obligated to accept the particular roll call waiters assigned by the Union unless the hotel has provided written notice to the Union barring or suspending a particular waiter for misconduct. (McChesney Aff. ¶ 7).

Hussein joined the Union in 1983 and has been employed by many hotels in the metropolitan area. (Hussein Tr. at 52). He first began working for the Waldorf as a roll call waiter in 1983. (Hussein Tr. at 100). Hussein is well-known among the New York hotels. (Sansone Aff. ¶ 3). Since 1985, Hussein has been the subject of "bar" letters issued by at least 10 hotels, including the Waldorf, for misconduct such as insubordination, unprofessional behavior, belligerence, rudeness to customers, and physical altercations. (Raisfeld Aff. ¶ 2 & Exh. 1).[2]

On November 6, 1996, Hussein had a physical altercation with another waiter at the Waldorf and, as a result, was suspended from roll call. (Hussein Tr. at 7–8). His suspension concluded in April 1997, when he became eligible to resume working at the Waldorf. (Hussein Tr. at 110). Hussein, however, chose not to work there again until August 1997 because he was angry and upset with the Union. (Hussein Tr. at 110–11).

On September 9, 1997, shortly after resuming work at the Waldorf, Hussein got into an argument because he refused to wear the required bow tie while setting up

---

1. Although defense counsel provided Hussein with a transcript of his deposition and an errata sheet, Hussein did not return the transcript with his signature or correction. (Raisfeld Aff. ¶ 3).

2. Hussein is no stranger to this Court. He has filed numerous actions in the Southern District of New York. *See, e.g., Hussein v. Griesa,* No. 93 Civ. 1268(CLB); *Hussein v. Pitta,* No. 90 Civ. 4486(TPG); *Hussein v. The Pierre Hotel,* No. 93 Civ. 3698(MGC); *Hussein v. Broomfield,* No. 95 Civ. 41(KMW); *Hussein v. City Wide Sec. Serv., Inc.,* No. 97 Civ. 4930(KMW); *Hussein v. Hotel Employees & Rest. Union, Local 6,* No. 98 Civ. 9017(SAS); *Hussein v. Sheraton New York Hotel,* No. 99 Civ. 2434(SHS); *Hussein v. The Pierre Hotel,* 99 Civ. 02715(DC); *Hussein v. Chin,* No. 00 Civ. 2415(MBM). Moreover, in June 2000, Judge Stein cautioned Hussein against continuing to file non-meritorious complaints in this District:

> Hussein has filed a total of ten complaints in this Court, including four within the past year. Seven of these complaints ... have been against the Union, employees of the Union, and hotels where Hussein has been employed.... In addition, Hussein has filed two complaints against judges of this Court, both dismissed *sua sponte.* ... Every complaint filed with the Court expends valuable resources. Not every disagreeable incident or decision should become a lawsuit. Plaintiff is hereby informed that the continued filing of non-meritorious actions may result in the entry of an order barring him from filing any future action without prior leave of court pursuant to 28 U.S.C. § 1651(a).

*Hussein v. Sheraton New York Hotel,* 100 F.Supp.2d 203, 209–10 (S.D.N.Y.2000) (granting motion to dismiss complaint).

for a banquet. As a result, the Union provided Hussein with a written summary of the Waldorf's dress and appearance requirements. These included a rule that "[m]en's mustaches must be neatly trimmed; no other facial hair is acceptable." (Hussein Exh. 1). Nonetheless, Hussein showed up for an assignment at the Waldorf on November 3, 1997 with a beard measuring approximately one-eighth of an inch in depth; he had not shaven for two to five days. (Hussein Tr. at 12; McChesney Aff. ¶ 11).[3] This was the first time he reported to work at the Waldorf unshaven. (Hussein Tr. at 55).

When a Waldorf representative asked Hussein about his beard he stated that it "is part of my religion." (Hussein Tr. at 18). Hussein had not previously told anyone at the Waldorf about his religion. (Hussein Tr. at 55–56; McChesney Aff. ¶ 15; Sansone Aff. ¶ 6). The Waldorf banquet management would not let Hussein work with a beard. (Hussein Tr. at 9; McChesney Aff. ¶ 16; Sansone Aff. ¶¶ 4–6). Under all the circumstances, the Waldorf's banquet services department doubted the sincerity of Hussein's assertion that he did not shave for religious reasons. (McChesney Aff. ¶¶ 14–16; Sansone Aff. ¶¶ 6–7). In addition, the Waldorf managers believed that if they were to exempt Hussein from the appearance requirements, they would jeopardize the hotel's reputation and also set a bad precedent for dealing with other roll call staff. (Sansone Aff. ¶ 7).

At most, Hussein remained unshaven for three months. He shaved his beard in the beginning of January 1998 and as of the date of his deposition, he had continued to shave daily. (Hussein Tr. at 6, 92).

## B. *Procedural History*

Hussein commenced this action on December 10, 1998 against three defendants: the Waldorf, the Union, and Union officer Carlos Lopez. The Union and Lopez moved to dismiss all claims against them and the Waldorf moved to dismiss certain claims. On January 11, 2000 I granted both motions. *See Hussein v. Waldorf Astoria*, No. 99 Civ. 1652, 2000 WL 16928, at *6 (S.D.N.Y. Jan. 11, 2000). The sole surviving claim is Hussein's Title VII claim against the Waldorf.

During discovery, counsel for the Waldorf submitted several letters to the Court complaining that Hussein was not cooperating and was not meeting his discovery obligations. In an order dated May 15, 2000, I denied the Waldorf's application to dismiss the complaint for plaintiff's alleged failure to comply with his discovery obligations, without prejudice, allowing defendant to file a formal motion to dismiss the complaint on these grounds simultaneously with its motion for summary judgment.

This motion followed.

## DISCUSSION

### A. *Applicable Law*

#### 1. *Summary Judgment*

Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

---

**3.** The Waldorf's evidence that Hussein's beard was only two to five days old and measured approximately "one-eighth of an inch of obvious stubble" is uncontradicted. (*See* McChesney Aff. ¶ 11). During his deposition, Hussein evaded questions about the length of his beard. (*See* Hussein Tr. at 7, 12–13, 19, 72, 112–13). He does admit that as late as September 1997 he had not been growing a beard, and that he has had a beard for a total of only two or three months during his entire life. (Hussein Tr. at 7, 111, 155).

U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the Court's task is not to "weigh the evidence and determine the truth of the matter but [to] determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is genuine if it can reasonably be resolved in favor of either party. *Id.* at 250, 106 S.Ct. 2505. A fact is material if it can affect the outcome of the action based on the governing law. *Id.* at 248, 106 S.Ct. 2505.

In evaluating the record, the Court must resolve ambiguities and draw reasonable inferences against the moving party and assess whether there are any factual issues to be tried. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Bickerstaff v. Vassar College,* 196 F.3d 435, 448 (2d Cir.1999), *cert. denied,* 530 U.S. 1242, 120 S.Ct. 2688, 147 L.Ed.2d 960 (2000). Summary judgment is used appropriately "to streamline the process for terminating frivolous claims and to concentrate its resources on meritorious litigation." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986) (citation omitted).

In a motion for summary judgment, the moving party must first demonstrate the absence of genuine issues of material fact, and then the nonmoving party must set forth facts proving that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321–22, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The nonmoving party may not rely on conclusory allegations to create disputed factual issues. *See Hussein v. Hotel Employees & Rest. Union, Local 6* (*"Hussein v. Local 6"*), 108 F.Supp.2d 360, 365 (S.D.N.Y.2000) (citing *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998)). Rather, the nonmoving party must present "significant probative evidence tending to support the complaint." *First*

*Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). *See Lujan,* 497 U.S. at 888, 110 S.Ct. 3177 ("the object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint … with conclusory allegations"); *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. 2505 ("[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denial of his pleading, but … must set forth specific facts showing there is a genuine issue for trial.'" (quoting Fed.R.Civ.P. 56(e))).

To defeat a motion for summary judgment, the nonmoving party must do more than raise "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *see Fleurcius v. Short Line Hudson Transit Bus,* No. 99 Civ. 2754, 2000 WL 1863536, at *4 (S.D.N.Y. Dec. 20, 2000). There is no issue for trial unless there exists sufficient evidence favoring the nonmoving party to support a jury verdict for that party. *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

The Second Circuit has held that the same summary judgment standard applies for a discrimination case. *Fisher v. Vassar Coll.,* 114 F.3d 1332, 1347 (2d Cir.1997) ("As in any other type of case, the judge must analyze the evidence, along with the inferences that may be reasonably drawn from it, and decide if it raises a jury question as to whether the plaintiff was the victim of discrimination."), *abrogated on other grounds, Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *See Hussein v. Local 6,* 108 F.Supp.2d at 365.

As "discrimination will seldom manifest itself overtly, courts must … carefully

distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff,* 196 F.3d at 448; *see Hussein v. Local 6,* 108 F.Supp.2d at 365. Nonetheless, "while the court has an obligation to read [the pro se party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments they suggest, . . . a pro se party's bald assertion, completely unsupported by the evidence, is not sufficient to overcome a motion for summary judgment." *Hussein v. Local 6,* 108 F.Supp.2d at 365 (internal quotations omitted) (alterations in original).

### 2. *Religious Discrimination Under Title VII*

Title VII prohibits an employer from discriminating against an employee on the basis of the employee's religious beliefs or practices unless the employer "shows that it cannot 'reasonably accommodate' the employee's religious needs without 'undue hardship on the conduct of the employer's business.'" *Philbrook v. Ansonia Bd. of Educ.,* 757 F.2d 476, 481 (2d Cir.1985) (quoting 42 U.S.C. § 2000e(j)), *aff'd and remanded on other grounds,* 479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986).

■ Courts have established a two-part framework to analyze a claim of religious discrimination under Title VII. *Id.; Tiano v. Dillard Dep't Stores, Inc.,* 139 F.3d 679, 681 (9th Cir.1998). First, the plaintiff must establish a prima facie case of discrimination by proving that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *Philbrook,* 757 F.2d at 481 (citations omitted); *see Taub v. F.D.I.C.,* No. 96 Civ. 5139, 1997 WL 195521, at *1 (D.C.Cir. Mar 31, 1997) (per

curiam); *Chalmers v. Tulon Co.,* 101 F.3d 1012, 1019 (4th Cir.1996); *Jones v. New York City Dep't of Corr.,* No. 99 Civ. 10031, 2001 WL 262844, at *6 (S.D.N.Y. Mar 15, 2001). Then, the burden shifts, and the employer must show that it could not reasonably accommodate the plaintiff without sustaining undue hardship. *Philbrook,* 757 F.2d at 481.

### B. *Application*

#### 1. *First Element: Bona Fide Religious Belief*

■ To establish a prima facie case of religious discrimination, the plaintiff must demonstrate that "he or she has a bona fide religious belief that conflicts with an employment requirement." *Philbrook,* 757 F.2d at 481. Hussein claims that the beard he had on November 3, 1997 was mandated by his religion. (Compl. ¶ 6; Hussein Tr. at 21). Hussein, however, does not provide concrete evidence to support this claim; he offers only a conclusory assertion that his religion required him to wear a beard. On the record before the Court, a reasonable jury could only conclude that his beard was not required by his religious beliefs.

The undisputed evidence shows that, until the night of the incident in question, Hussein had never worn a beard to work at the Waldorf—in some 14 years. Nor had he ever mentioned his religion to anyone at the Waldorf prior to the night in question. That night, he showed up for work with a beard that was only on eighth of an inch in depth, and it appeared that he had not shaved in two to five days. Hussein has made no effort to explain why, if his religion prevented him from shaving, he had never worn a beard before. He does not contend, for example, that he had just converted to his religion. Finally, within three months, he shaved his beard,

an undisputed fact that also undercuts his claim of religious necessity.

While I recognize that it is unusual to grant a summary judgment motion when a party's intent is at issue, in this case, a reasonable jury could only find that Hussein's religious assertion was not bona fide. *See Philbrook,* 757 F.2d at 481 ("[I]t is entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity ... of someone's religious beliefs."). A reasonable juror could only conclude that Hussein showed up for work unshaven on November 3, 1997, and that, when a supervisor complained about his beard, Hussein used religion as an excuse. As Judge Scheindlin has held in dismissing another religious discrimination case brought by Hussein, "Title VII does not require the accommodation of personal preferences, even if wrapped in religious garb." *Hussein v. Local 6,* 108 F.Supp.2d at 370 (holding that Hussein failed to show a bona fide religious belief that conflicted with an employment requirement and was not entitled to Title VII protection).

### 2. *Second Element: Notice*

Even assuming an issue of fact exists with respect to the first element, Hussein fails on the second element of a prima facie case of Title VII religious discrimination. To satisfy the second element, a plaintiff must properly notify the employer of the plaintiff's conflicting religious belief. *Philbrook,* 757 F.2d at 481. Here, a reasonable juror could only conclude that Hussein did not provide proper notification. *See Chalmers,* 101 F.3d at 1020 ("[G]iving notice to co-workers at the same time as an employee violates employment requirements is insufficient to provide adequate notice to the employer and to shield the employee's conduct"); *Johnson v. Angelica Uniform Group, Inc.,* 762 F.2d 671, 673 (8th Cir.1985) ("Had [plaintiff] informed [her employer] of her need for religious accommodation ... [in advance], her em-

ployer would have had the chance to explain the ... policy in relation to [her] religious needs, and perhaps work out an arrangement satisfactory to both parties."); *Hussein v. Local 6,* 108 F.Supp.2d at 369.

It is undisputed that Hussein did not mention the purported conflict between his religion and the hotel's policy until after management questioned him about his beard. (Hussein Tr. at 55–56). Moreover, Hussein was aware of the grooming policy because a union dispatcher had recently sent him a copy of the Waldorf's uniform code. (Hussein Tr. at 65; Hussein Exh. 1).

As Hussein did not give the Waldorf sufficient notice to allow it to work out a satisfactory arrangement with him, a reasonable juror could only conclude that Hussein did not properly notify the Waldorf of his demands. Accordingly, Hussein fails to satisfy the notice element of a prima facie case.

### 3. *Third Element: Discipline for Failure to Comply*

Hussein alleges that he was disciplined for failing to comply with an employment requirement that conflicted with his bona fide religious beliefs. Even if Hussein was, in fact, growing a beard as part of his religious practice, the incontrovertible evidence shows that the Waldorf acted in good faith—that the Waldorf's decision to deny Hussein an exception to its grooming requirement was not a refusal to accommodate Hussein's religious needs, but rather a decision based on a reasonable belief that Hussein's beard was not sincerely related to his religion. *See Agugliaro v. Brooks Bros., Inc.,* 927 F.Supp. 741, 747 (S.D.N.Y.1996) ("Even assuming defendants were wrong in their belief ... what is significant is that they based their decision to dismiss plaintiff on that belief, and

not on his age, gender, or pension status."). In other words, a reasonable jury could only find that the Waldorf refused to grant Hussein an exemption from its no-beard policy, not because of his religious observances, but because it believed that Hussein's invocation of his religion was not in good faith.

Hussein agrees that he is known at the Waldorf and other hotels for his argumentativeness and litigiousness. (Hussein Tr. at 64 ("I am famous. Everybody know me Hussein in the hotel association. This is fact. We have too many dispute, me and the hotel association.")). Hussein has been the subject of at least 10 "bar" letters for his misconduct. (Raisfeld Aff. ¶ 2 & Exh. 1; Sansone Aff. ¶ 3). Only two months earlier, Hussein argued with Waldorf management about his uniform requirements, as he refused to wear the required black bow tie and claimed that the assistant banquet coordinator had "no right to interfere with waiter" or "to involve with waiter, his tie." (Hussein Tr. at 65–67; Hussein Exh. 1).

Moreover, as noted above, Hussein had never appeared for work before with a beard, he had never mentioned his religion before, he showed up for work unshaven with a new growth, and he invoked his religion only when a supervisor objected to the beard. In the absence of any effort by Hussein to substantiate his claim of religious necessity, the Waldorf's skepticism was reasonable. Given these facts, a jury could only conclude that the Waldorf reasonably believed that Hussein's failure to shave was not based on religion and, therefore, the Waldorf did not discipline Hussein for failing to comply with an employment requirement that conflicted with a bona fide religious practice. No jury could find anti-Muslim or anti-religion animus here. Accordingly, Hussein does not satisfy the third element of a prima facie case.

#### 4. *Reasonable Accommodation*

■ Assuming *arguendo* that Hussein does establish a prima facie case, I turn to the Waldorf's obligation to provide reasonable accommodation. *Philbrook,* 757 F.2d at 481. The Waldorf asserts that granting Hussein an exception to the grooming requirement that night would have caused the Waldorf undue hardship by jeopardizing its reputation as well as undermining its efforts to maintain standards and discipline among the banquet waiters. *Cf. Hussein v. Local 6,* 108 F.Supp.2d at 372 (holding that the Union is not obligated to exempt Hussein from Friday afternoon roll call attendance because an exemption would create morale problems, trigger litigation, and cause economic hardship on those waiters who attend roll call but do not get job assignments). Given the circumstances and the manner in which Hussein notified his employer of his need for accommodations at the last moment, the Waldorf was not obligated to comply with Hussein's on-the-spot demand for an exception to its policies.

The courts have noted that "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 69, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986) (quoting *Brener v. Diagnostic Ctr. Hosp.,* 671 F.2d 141, 145–46 (5th Cir.1982) and citing *American Postal Workers Union v. Postmaster Gen.,* 781 F.2d 772, 777 (9th Cir.1986)). Hussein did not cooperate with or assist the Waldorf in accommodating him. In fact, the manner in which Hussein presented the issue to the Waldorf only enhanced the difficulty in accommodating him because granting an exception could have interfered with the Waldorf's ability to manage other banquet staff. (McChesney Aff. ¶ 22).

Some courts have found that clean-shavenness is a bona fide occupational qualification in certain businesses and, in those situations, as long as the employer's grooming requirement is not directed at a religion, enforcing the policy is not an unlawful discriminatory practice. *See, e.g., E.E.O.C. v. Sambo's of Georgia, Inc.,* 530 F.Supp. 86, 91 (N.D.Ga.1981) (holding that a restaurant's enforcement of a "clean shaven" policy on a member of the Sikh religion was not unlawful discrimination); *Eastern Greyhound Lines Div. of Greyhound Lines, Inc. v. New York State Div. of Human Rights,* 27 N.Y.2d 279, 283, 317 N.Y.S.2d 322, 265 N.E.2d 745 (1970) (enforcing "clean-shaven" requirement is not unlawful discrimination against Muslim baggage clerk because policy is justified by desire to promote business and has no religious connotation).

Here, in view of the circumstances in which Hussein first raised the issue of his religion, and the valid, non-discriminatory reasons for the Waldorf's rule prohibiting waiters from wearing beards, a reasonable jury could only conclude that the Waldorf was not obliged to accommodate Hussein's last-minute request for an exemption from the no-beard policy.

### CONCLUSION

For the reasons set forth above, the Waldorf's motion for summary judgment is granted and the complaint is dismissed, with prejudice and with costs. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.