# United States Court of Appeals
## For the First Circuit

---

No. 04-1475

KIMBERLY M. CLOUTIER,

Plaintiff, Appellant,

v.

COSTCO WHOLESALE CORP.,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

---

Before

Torruella, Lipez, and Howard, Circuit Judges.

---

Michael O. Shea for appellant.
Lynn A. Kappelman, with whom Seyfarth Shaw and Krista Green
Pratt were on brief, for appellee.
Stephen A. Bokat, Ellen Dunham Bryant, National Chamber
Litigation Center, Ann Elizabeth Reesman, Laura Anne Giantris, and
McGuiness Norris & Williams, LLP, on brief for The Chamber of
Commerce of the United States and the Equal Employment Advisory
Council, amici curiae.

---

December 1, 2004

---

**LIPEZ, Circuit Judge**. Kimberly Cloutier alleges that her employer, Costco Wholesale Corp. (Costco), failed to offer her a reasonable accommodation after she alerted it to a conflict between the "no facial jewelry" provision of its dress code and her religious practice as a member of the Church of Body Modification. She argues that this failure amounts to religious discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a), and the corresponding Massachusetts statute, Mass. Gen. Laws ch. 151B, § 4(1A). The district court granted summary judgment for Costco, concluding that Costco reasonably accommodated Cloutier by offering to reinstate her if she either covered her facial piercing with a band-aid or replaced it with a clear retainer. We affirm the grant of summary judgment, but on a different basis. See Estades-Negroni v. Assocs. Corp. of North Am., 377 F.3d 58, 62 (1st Cir. 2004) ("We may affirm . . . on any grounds supported by the record."). We hold that Costco had no duty to accommodate Cloutier because it could not do so without undue hardship.

## I.

We set forth the relevant facts from the summary judgment record, viewing them in the light most favorable to Cloutier. Diaz v. City of Fitchburg, 176 F.3d 560, 561 (1st Cir. 1999) ("Because this is an appeal from a grant of summary judgment to defendants, we recite the facts in the light most favorable to plaintiffs."). Kimberly Cloutier began working at Costco's West Springfield,

Massachusetts store in July 1997. Before her first day of work, Cloutier received a copy of the Costco employment agreement, which included the employee dress code. When she was hired, Cloutier had multiple earrings and four tattoos, but no facial piercings.

Cloutier moved from her position as a front-end assistant[1] to the deli department in September 1997. In 1998, Costco revised its dress code to prohibit food handlers, including deli employees, from wearing any jewelry. Cloutier's supervisor instructed her to remove her earrings pursuant to the revised code, but Cloutier refused. Instead, she requested to transfer to a front-end position where she would be permitted to continue wearing her jewelry. Cloutier did not indicate at the time that her insistence on wearing her earrings was based on a religious or spiritual belief.

Costco approved Cloutier's transfer back to a front-end position in June 1998, and promoted her to cashier soon thereafter. Over the ensuing two years, she engaged in various forms of body modification including facial piercing and cutting. Although these practices were meaningful to Cloutier, they were not motivated by a religious belief.

In March 2001, Costco further revised its dress code to prohibit all facial jewelry, aside from earrings, and disseminated

---

[1]Cloutier's responsibilities as a front-end assistant included packing customers' purchases, reshelving items, retrieving item numbers, and occasionally filling in as a cashier.

the modified code to its employees. Cloutier did not challenge the dress code or seek an accommodation, but rather continued uneventfully to wear her eyebrow piercing for several months.

Costco began enforcing its no-facial-jewelry policy in June 2001. On June 25, 2001, front-end supervisors Todd Cunningham and Michele Callaghan informed Cloutier and another employee, Jennifer Theriaque, that they would have to remove their facial piercings. Cloutier and Theriaque did not comply, returning to work the following day still wearing their piercings. When Callaghan reiterated the no-facial-jewelry policy, Cloutier indicated for the first time that she was a member of the Church of Body Modification (CBM), and that her eyebrow piercing was part of her religion.[2]

The CBM was established in 1999 and counts approximately 1000 members who participate in such practices as piercing, tattooing, branding, cutting, and body manipulation. Among the goals espoused in the CBM's mission statement are for its members to "grow as individuals through body modification and its teachings," to "promote growth in mind, body and spirit," and to be

---

[2]There is some dispute as to when Cloutier joined the CBM. The record includes an application dated June 27, 2001, two days after Cloutier was first told to remove her facial piercing. However, Cloutier claims that she first filled out an electronic application in March 2001, but that she had to reapply in June because the March application had not been processed due to a computer error. For the purposes of our summary judgment analysis, we accept Cloutier's account.

"confident role models in learning, teaching, and displaying body modification."  The church's website, apparently its primary mode for reaching its adherents, did not state that members' body modifications had to be visible at all times or that temporarily removing body modifications would violate a religious tenet.  Still, Cloutier interprets the call to be a confident role model as requiring that her piercings be visible at all times and precluding her from removing or covering her facial jewelry.  She does not extend this reasoning to the tattoos on her upper arms, which were covered at work by her shirt.

After reviewing information that Cloutier provided from the CBM website, Callaghan's supervisor, Andrew Mulik, instructed Cloutier and Theriaque to remove their facial jewelry.  They refused.  The following day, Cloutier filed a religious discrimination complaint with the Equal Employment Opportunity Commission (EEOC), which is empowered to enforce Title VII.  42 U.S.C. § 2000e-5.

When Cloutier returned to work for her next shift on June 29, 2001, she was still wearing her facial jewelry.  She met with Mark Shevchuk, the store manager, about her membership in the CBM and the EEOC complaint.  During the course of the meeting, Cloutier suggested that she be allowed to cover her eyebrow piercing with a flesh-colored band-aid.  Shevchuk rejected the suggestion and told Cloutier that she had to remove the piercing or go home.  She left.

Theriaque also returned to work wearing her facial jewelry on June 29, 2001 and was reminded of the dress code. She asked whether she could wear clear plastic retainers in place of her jewelry to prevent the piercings from closing. The parties disagree as to whether Costco accepted this arrangement immediately or after several weeks of consideration. For purposes of our summary judgment analysis, we accept Cloutier's contention that Theriaque wore the retainers to work for several weeks unnoticed before Costco gave her permission to do so.

Although Cloutier learned during the week of July 2, 2001 that Theriaque had returned to work with retainers, she chose to wait for her EEOC complaint to be resolved rather than following suit. During the week of July 7, 2001, Cloutier inquired of her superiors whether she could use vacation time to cover her absences and was told that she had been suspended. The following week, on July 14, Cloutier received notice in the mail that she had been terminated for her unexcused absences resulting from noncompliance with the dress code. She claims that this was her first notice that Costco had decided not to grant her request for an accommodation that would reconcile the dress code with her religious requirement of displaying her facial jewelry at all times.

The parties remained in contact after Cloutier's termination through the EEOC mediation process. During a meeting

on August 10, 2001, Costco offered to let Cloutier return to work wearing either plastic retainers or a band-aid over her jewelry (the same accommodation that Cloutier had suggested prior to her termination). Shevchuk repeated the offer in a letter dated August 29, 2001, asking Cloutier to respond by September 6, 2001.

Although there is some dispute as to whether Cloutier attempted to respond to Costco's offer before the deadline,[3] she now maintains that neither of the proffered accommodations would be adequate because the CBM's tenets, as she interprets them, require her to display all of her facial piercings at all times. Replacing her eyebrow piercing with a plastic retainer or covering it with a band-aid would thus contradict her religious convictions. Cloutier asserts that the only reasonable accommodation would be to excuse her from Costco's dress code, allowing her to wear her facial jewelry to work. Costco responds that this accommodation would interfere with its ability to maintain a professional appearance and would thereby create an undue hardship for its business.

The EEOC determined in May 2002 that Costco's actions violated Title VII of the Civil Rights Act of 1964. It found that Cloutier's refusal to remove her facial jewelry was "religiously based as defined by the EEOC," that Costco did not allow her to wear her facial jewelry at work, and that there was no evidence

---

[3]Costco maintains that Cloutier never responded; Cloutier contends that she called Shevchuk on September 6 to discuss the offer, but that he was unavailable and did not return her call.

that allowing her to wear the jewelry would have constituted an undue hardship. Based on this determination, Cloutier filed a suit against Costco in federal district court in August 2002 alleging a Title VII violation. 42 U.S.C. § 2000e-2(a). She amended the complaint four months later, adding state law claims for religious discrimination, Mass. Gen. Laws ch. 151B §4(1)(A), and violation of her civil rights, Mass. Gen. Laws ch. 12 § 11I.

The district court granted Costco's motion to dismiss Cloutier's state civil rights claim but allowed the federal and state discrimination claims to proceed. Costco then moved for summary judgment on the discrimination claims.

In ruling on that motion, the court applied the two-part framework set forth in EEOC v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002). First, the court evaluated Cloutier's prima facie case, which required her to show that (1) a bona fide religious practice conflicted with an employment requirement, (2) she brought the practice to Costco's attention, and (3) the religious practice was the basis for the termination. Id. The court expressed serious doubts as to whether Cloutier's claim was based on a "bona fide religious practice" for purposes of the first element, noting that even assuming arguendo that the CBM is a bona fide religion, it "in no way requires a display of facial piercings at all times. The requirement that she display her piercings, open and always,

-8-

represents the plaintiff's personal interpretation of the stringency of her beliefs." The court also questioned the sincerity of Cloutier's personal interpretation, given that she initially offered to cover her piercing with a band-aid, an alternative that she now claims would violate her religion.

The court ultimately avoided ruling on whether the CBM is a religion or whether Cloutier's interpretation of the CBM tenets is protected by Title VII. Instead, the court concluded that even if Cloutier had met her prima facie case, Costco should prevail because it fulfilled its obligations under the second part of the Title VII framework. Specifically, the court found that Costco met its burden of showing that it had offered Cloutier a reasonable accommodation of her religious practice:

> Costco's offer of accommodation was manifestly reasonable as a matter of law. The temporary covering of plaintiff's facial piercings during working hours impinges on plaintiff's religious scruples no more than the wearing of a blouse, which covers plaintiff's tattoos. The alternative of a clear plastic retainer does not even require plaintiff to cover her piercings. Neither of these alternative accommodations will compel plaintiff to violate any of the established tenets of the CBM.

Cloutier v. Costco Wholesale Corp., 311 F. Supp. 2d 190, 199 (D. Mass. 2004).

In granting summary judgment on the Title VII claim, the court stressed that "the search for a reasonable accommodation goes both ways. Although the employer is required under Title VII to accommodate an employee's religious beliefs, the employee has a

duty to cooperate with the employer's good faith efforts to accommodate." Id. at 198. The court also noted that Title VII does not require Costco to grant Cloutier's preferred accommodation, but merely a reasonable one. While Costco's suggested accommodation balanced Cloutier's beliefs with its interest in presenting a professional appearance, Cloutier "offered no accommodation whatsoever."[4] Id. at 200.

Having resolved the federal claim, the court turned to Cloutier's state law claim under Mass. Gen. Laws ch. 151B § 4(1A), which has been interpreted largely to mirror Title VII. Wheatley v. AT&T, 418 Mass. 394, 397, 636 N.E.2d 265, 268 (1994). The statute prevents employers from imposing a condition of employment which "would require [an employee] to violate, or forego the practice of, his creed or religion as required by that creed or religion." Mass Gen. Laws ch. 151B § 4(1A). "Creed or religion" is defined as "any sincerely held religious beliefs, without regard to whether such beliefs are approved, espoused, prescribed or required by an established church or other religious institution or organization." Id. The employee bears the burden of proof in establishing that something is a practice of his creed or religion. Under this examination, "[i]nquiry as to whether an employee's belief is sincere is constitutionally appropriate." Opinion of the

---

[4]This observation reflects Cloutier's final position that the only acceptable accommodation would be to exempt her from the no-facial-jewelry policy.

Justices, 423 Mass. 1244, 1246, 673 N.E.2d 36, 37 (1996).  Where the employee demonstrates that a conflict exists, the burden shifts to the employer, who must prove that it offered the employee a "reasonable accommodation," defined as one that "shall not cause undue hardship in the conduct of the employer's business."  Mass. Gen. Laws ch. 151B § 4(1A).

Under the foregoing framework, the district court concluded that summary judgment for Costco was appropriate. Although it noted the possibility that the state statute "casts a broader net than Title VII in covering purely personal beliefs that may be entitled to protection from discrimination," the court relied on its previous finding that Costco's offer to let Cloutier return to work wearing a band-aid or plastic retainer was "reasonable as a matter of law." Cloutier, 311 F. Supp. 2d at 202.

Cloutier now appeals, arguing that the court erred in finding no violation of Title VII or Mass. Gen. L. ch. 151B § 4(1A) and that disputed material facts made summary judgment inappropriate.[5]  Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, the court finds that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a

---

[5]Cloutier also argues that the district court improperly rejected her retaliation claim on the grounds that it was not pled separately.  Because we agree that the claim was not properly raised in the Second Amended Complaint, we will not reach its merits.

-11-

matter of law.  Dasey v. Anderson, 304 F.3d 148, 153 (1st Cir. 2002).  Our review is de novo.  Whitlock v. Mac-Gray, Inc., 345 F.3d 44, 45 (1st Cir. 2003) ("We review a summary judgment de novo, construing the record in the light most favorable to the nonmoving party and resolving all reasonable inferences in that party's favor.").

## II.

On appeal, Cloutier vigorously asserts that her insistence on displaying all her facial jewelry at all times is the result of a sincerely held religious belief.  Determining whether a belief is religious is "more often than not a difficult and delicate task," one to which the courts are ill-suited.  Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 714 (1981).  Fortunately, as the district court noted, there is no need for us to delve into this thorny question in the present case.  Even assuming, arguendo, that Cloutier established her prima facie case, the facts here do not support a finding of impermissible religious discrimination.

Although the district court's decision rested on the conclusion that Costco had offered Cloutier a reasonable accommodation, "[w]e may affirm . . . on any grounds supported by the record." Estades-Negroni v. Assocs. Corp. of North Am., 377 F.3d 58, 62 (1st Cir. 2004).  We find dispositive that the only accommodation Cloutier considers reasonable, a blanket exemption

-12-

from the no-facial-jewelry policy, would impose an undue hardship on Costco.[6] In such a situation, an employer has no obligation to offer an accommodation before taking an adverse employment action. EEOC v. Ilona of Hungary, Inc., 97 F.3d 204, 211 (7th Cir. 1996); Toledo v. Nobel-Sysco, Inc., 892 F.2d 1481, 1490 (10th Cir. 1989).

## A. Title VII

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees on the basis of, among other things, religion. 42 U.S.C. § 2000e-2(a). Under Title VII, an employer must offer a reasonable accommodation to resolve a conflict between an employee's sincerely held religious belief and a condition of employment, unless such an accommodation would create an undue hardship for the employer's business. 42 U.S.C. § 2000e(j).

---

[6]We note that Cloutier's requested accommodation has evolved over time. When she first informed Costco management that her religious practice conflicted with its no-facial-jewelry requirement, Cloutier proposed that she be allowed to cover her piercing with a band-aid while working. In the course of this litigation, she has asserted that, even at the time, she believed that wearing the band-aid would violate the tenets of the CBM but nonetheless proposed it to "try and come to an agreement with them." She now maintains that covering her piercings with a band-aid or temporarily replacing them with a plastic retainer would violate her religious beliefs and thus that any such accommodation would not be reasonable. We accept the finality of Cloutier's position in evaluating whether Costco could have reasonably accommodated her religious practice without suffering an undue hardship.

As noted, the First Circuit applies a two-part framework to religious discrimination claims under Title VII. First, the plaintiff must make her prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action. Unión Independiente, 279 F.3d at 55. If the plaintiff establishes her prima facie case, the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship. Id.

We follow the district court in assuming, arguendo, that Cloutier established a prima facie case sufficient to shift the burden to Costco to demonstrate that it offered a reasonable accommodation or that it could not do so without suffering undue hardship.

1. Reasonable accommodation

The parties dispute when Costco first offered Cloutier an accommodation, but we view the facts on summary judgment in the light most favorable to Cloutier. Cloutier was terminated on July 14, 2001. She maintains that Costco did not extend any offer of accommodation until August 10, 2001, approximately one month later, during a meeting that was part of the EEOC mediation process.[7] The

_____

[7]Costco contends that it offered an accommodation to Cloutier before she was terminated, when she learned by July 2, 2001 that Theriaque, her co-worker and fellow member of the CBM, had returned to work wearing fishing wire or a plastic retainer. Cloutier

-14-

district court acknowledged this time line but asserted that "[t]his delay [in making the offer after Cloutier had been terminated] does not justify denial of the motion for summary judgment." The court offered three explanations for this statement: (1) Costco may have offered Cloutier back pay, (2) "the delay in transmitting the offer emerged as much from a failure of cooperation by plaintiff as from any intransigence on the part of the defendant," and (3) the assumption that Cloutier would not bring the case to trial over four weeks' salary. Unpersuaded that the first and third points are relevant to our reasonable accommodation inquiry,[8] we question the district court's dismissal of this timing difficulty.

Courts in at least two of our sister circuits have ruled that an accommodation offered after an adverse employment action does not shield an employer from liability under Title VII. See

---

claims that she was unaware at the time that Theriaque had Costco's permission for this arrangement. We accept Cloutier's version for the purpose of this summary judgment analysis.

[8]Title VII's reasonable accommodation framework is an effort to reconcile conflicts between religious practices and business concerns. See, e.g., Unión Independiente, 279 F.3d at 55 ("[I]n general terms, Title VII requires employers . . . to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees.") The availability and amount of back pay at issue are not pertinent to whether Costco's August 2001 offer reasonably reconciled the conflict between Cloutier's religious practice and Costco's interest in presenting a professional workforce. Indeed, these factors seem more appropriate to assessing the reasonableness of a settlement offer than of an accommodation offer.

Heller v. EBB Auto Co., 8 F.3d 1433, 1440 (9th Cir. 1993) (accommodation offer following termination was "relevant only to the issue of mitigation of damages"); Toledo, 892 F.2d at 1487-88 (settlement offer extended after refusal to hire does not qualify as a reasonable accommodation). Courts have also acknowledged that the opposite rule, treating as reasonable a post-termination offer extended during the EEOC mediation process, would "encourage the making of such offers, thus furthering [Title VII's] important statutory policy favoring voluntary reconciliation." Toledo, 892 F.2d at 1487. Yet, as the Tenth Circuit has noted, this rule would also leave employers' conduct "virtually unregulated" when conflicts first arise. Id. at 1488. As a consequence, "Title VII would provide employees no protection until after the fact, an important consideration given the impact a suspension, termination, or rejection may have on an individual's life." Id.

Even this limited discussion illustrates that the question of whether a post-termination offer extended during the EEOC mediation process can be a reasonable accommodation raises difficult issues. We have yet to consider this question directly and decline to do so here on the limited summary judgment record. Our affirmance rests instead on an alternative ground advanced by Costco -- namely, that the only accommodation Cloutier considers reasonable would impose an undue hardship on Costco.

2. Undue hardship

Cloutier asserts that the CBM mandate to be a confident role model requires her to display all of her facial piercings at all times.  In her view, the only reasonable accommodation would be exemption from the no-facial-jewelry policy.  Costco maintains that such an exemption would cause it to suffer an undue hardship, and that as a result it had no obligation to accommodate Cloutier.  See Toledo, 892 F.2d at 1490 ("[A]n employer who has made no efforts to accommodate the religious beliefs of an employee or applicant before taking action against him may only prevail if it shows that no accommodation could have been made without undue hardship.").

An accommodation constitutes an "undue hardship" if it would impose more than a de minimis cost on the employer.  Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84 (1977).  This calculus applies both to economic costs, such as lost business or having to hire additional employees to accommodate a Sabbath observer, and to non-economic costs, such as compromising the integrity of a seniority system.  United States v. Bd. of Educ., 911 F.2d 882, 887 (3d Cir. 1990) (citing Hardison, 432 U.S. at 79-83); see also EEOC v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 615 (9th Cir. 1988) ("Cost cannot always be measured in terms of dollars.") (internal quotation marks omitted).

Cloutier argues that Costco has not met its burden of demonstrating that her requested accommodation would impose an

-17-

undue hardship.  See Unión Independiente, 279 F.3d at 55 (describing the allocation of burdens in a Title VII inquiry).  She asserts that she did not receive complaints about her facial piercings and that the piercings did not affect her job performance.  Hence, she contends that any hardship Costco posits is merely hypothetical and therefore not sufficient to excuse it from accommodating her religious practice under Title VII.

Courts are "somewhat skeptical of hypothetical hardships that an employer thinks might be caused by an accommodation that never has been put into practice."  Draper v. U.S. Pipe & Foundry Co., 527 F.2d 515, 520 (6th Cir. 1975).  "Nevertheless, it is possible for an employer to prove undue hardship without actually having undertaken any of the possible accommodations . . . ."  Id. It can do so by "examining the specific hardships imposed by specific accommodation proposals."  Toledo, 892 F.2d at 1490. Here, Costco has only one proposal to evaluate (allowing Cloutier to wear and display her body jewelry as she demands) and has determined that it would constitute an undue hardship.

The district court acknowledged that "Costco has a legitimate interest in presenting a workforce to its customers that is, at least in Costco's eyes, reasonably professional in appearance."  Costco's dress code, included in the handbook distributed to all employees, furthers this interest.  The preface to the code explains that, "Appearance and perception play a key

-18-

role in member service.  Our goal is to be dressed in professional attire that is appropriate to our business at all times. . . .  All Costco employees must practice good grooming and personal hygiene to convey a neat, clean and professional image."

It is axiomatic that, for better or for worse, employees reflect on their employers.  This is particularly true of employees who regularly interact with customers, as Cloutier did in her cashier position.  Even if Cloutier did not personally receive any complaints about her appearance, her facial jewelry influenced Costco's public image and, in Costco's calculation, detracted from its professionalism.

Costco is far from unique in adopting personal appearance standards to promote and protect its image.  As the D.C. Circuit noted, "Perhaps no facet of business life is more important than a company's place in public estimation. . . . Good grooming regulations reflect a company's policy in our highly competitive business environment.  Reasonable requirements in furtherance of that policy are an aspect of managerial responsibility." Fagan v. Nat'l Cash Register Co. 481 F.2d 1115, 1124-25 (D.C. Cir. 1973).

Courts have long recognized the importance of personal appearance regulations, even in the face of Title VII challenges. See Woods v. Safeway Stores, Inc., 420 F. Supp. 35, 43 (E.D. Va. 1976), aff'd, 579 F.2d 43 (4th Cir. 1978) (citing "a plethora" of cases in upholding an employer's right to "maintain grooming

-19-

standards" in Title VII cases). Such regulations are often justified with regard to safety concerns. E.g., Bhatia v. Chevron U.S.A., Inc., 734 F.2d 1382 (9th Cir. 1984) (affirming summary judgment for employer who refused to exempt a Sikh employee from the requirement that all machinists be clean-shaven, where the policy was based on the necessity of being able to wear a respirator with a gas-tight face seal because of potential exposure to toxic gases).

Courts considering Title VII religious discrimination claims have also upheld dress code policies that, like Costco's, are designed to appeal to customer preference or to promote a professional public image. E.g., Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 599 (S.D.N.Y. 2001) ("Some courts have found that clean-shavenness is a bona fide occupational qualification in certain businesses and, in those situations, as long as the employer's grooming requirement is not directed at religion, enforcing the policy is not an unlawful discriminatory practice."), aff'd, 31 Fed. Appx. 740 (2d Cir. 2002) (unpublished). The majority of religious discrimination cases in this arena appear to involve policies regulating facial hair. E.g., Hussein, 134 F. Supp. 2d 591; EEOC v. Sambo's of Georgia, Inc., 530 F. Supp. 86 (N.D. Geo. 1981) (holding that exempting a Sikh job applicant whose religious practice required that he wear a beard from a restaurant's no-facial-hair policy would constitute undue

-20-

hardship); cf. Woods, 420 F. Supp. at 43 (upholding employer's no-beard policy against a claim of racial discrimination, finding that it served a legitimate business interest in maintaining an image of cleanliness to attract and retain customers).

But we are not the first court to consider a religious discrimination claim involving jewelry. In Daniels v. City of Arlington, 246 F.3d 500 (5th Cir. 2001), a former police officer claimed that his dismissal for wearing a gold cross pin on his uniform in violation of the police department's no-pin policy violated Title VII. The only reasonable accommodation that Daniels cited was to exempt him from the no-pin policy. The Fifth Circuit granted summary judgment for the police department, concluding that "[t]he only accommodation Daniels proposes is unreasonable and an undue hardship for the city as a matter of law." Id. at 506. See also Wilson v. U.S. West Communications, 58 F.3d 1337, 1342 n.3 (8th Cir. 1995) (accommodating employee's religious vow to wear a graphic anti-abortion button, where employee insisted that no alternative was reasonable, was an undue hardship).

The assessment of what constitutes an undue hardship may be somewhat different for a private employer than for a police department. See Daniels, 246 F.3d at 503-04. Still, we are faced with the similar situation of an employee who will accept no accommodation short of an outright exemption from a neutral dress code. Granting such an exemption would be an undue hardship

-21-

because it would adversely affect the employer's public image. Costco has made a determination that facial piercings, aside from earrings, detract from the "neat, clean and professional image" that it aims to cultivate. Such a business determination is within its discretion. As another court has explained, "Even assuming that the defendants' justification for the grooming standards amounted to nothing more than an appeal to customer preference, . . . it is not the law that customer preference is an insufficient justification as a matter of law." Sambo's of Georgia, Inc., 530 F. Supp. at 91.

Cloutier argues that regardless of the reasons for the dress code, permitting her to display her facial jewelry would not be an undue hardship because Costco already overlooks other violations of its policy. In support of her position, she cites affidavits from two Costco employees identifying co-workers who "were allowed to wear facial piercing[s] . . . and were not disciplined." Costco responds that any employees who displayed facial jewelry did so without its permission or knowledge, noting that constant monitoring is impossible in a facility with several hundred employees.

We find Cloutier's contention, and the affidavits underlying it, unpersuasive. To the extent that the ambiguous term "allowed" implies that Costco was aware of the piercings, the affidavits are marred by an evidentiary flaw: the affiants do not

appear to have personal knowledge of Costco's awareness. See Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) (affidavits can block summary judgment "only insofar as they are 'made on personal knowledge . . . [and] set forth such facts as would be admissible in evidence'" (quoting Fed. R. Civ. P. 56(e))). And to the extent that the affidavits suggest that other employees' piercings went unnoticed, we do not believe that such isolated violations diminish the hardship Costco would suffer if it were forced to exempt Cloutier from its no-facial-jewelry policy.

Cloutier appears to reason that because other employees have violated the no-facial-jewelry policy, it would not be an additional burden on Costco's effort to present a professional workforce for her to display her piercings as well. But there is an important distinction between an employee who displays facial jewelry unnoticed in violation of the dress code and one who does so under an exemption from the dress code. In the first scenario, Costco can instruct an employee to remove facial jewelry as soon as it becomes aware of a violation. In the second scenario, Costco forfeits its ability to mandate compliance and thus loses control over its public image. That loss, as we have discussed, would constitute an undue hardship.

-23-

## B. Chapter 151B

Massachusetts law prohibits an employer from enforcing a condition of employment that would require an employee to violate or forego the practice of her creed or religion. Mass. Gen. Laws ch. 151B §4(1A). Where such a conflict arises, the law imposes upon employers the duty to offer a reasonable accommodation, defined as one that "shall not cause undue hardship in the conduct of the employer's business." Id.

As the district court explained, the statute sets forth a three-part inquiry. N.Y. & Mass. Motor Serv., Inc. v. Mass. Comm'n Against Discrimination, 401 Mass. 566, 575-76, 517 N.E.2d 1270, 1276 (1988); Mass. Gen. Laws ch. 151B § 4(1A). First, the employee bears the burden of proving that the employer required her to violate a religious practice required by her sincerely held belief. N.Y. & Mass. Motor Serv., Inc., 401 Mass. at 576, 517 N.E.2d at 1276. Second, an employee who needs time off for a religious observance must provide her employer with at least ten days' notice. Mass. Gen. L. ch. 151B § 4(1A).[9] Finally, the burden shifts to the employer to show that it offered a reasonable accommodation, or that it could not have offered an accommodation without causing undue hardship to its business. N.Y. & Mass. Motor Serv., Inc., 401 Mass. at 576, 517 N.E.2d at 1276.

---

[9]This requirement, of course, is not relevant to the case at hand.

As in the Title VII inquiry, we find the undue hardship factor determinative.  Under the statute, undue hardship

> shall include the inability of an employer to provide services which are required by and in compliance with all federal and state laws, . . . or where the health or safety of the public would be unduly compromised by the absence of such employee or employees, or where the employee's presence is indispensable to the orderly transaction of business and his or her work cannot be performed by another employee of substantially similar qualifications during the period of absence, or where the employee's presence is needed to alleviate an emergency situation.
>
> Mass. Gen. Laws ch. 151B § 4(1A).

Chapter 151B's definition of "undue hardship" does not explicitly address an accommodation request like Cloutier's, namely one that would alter an employee's appearance rather than her schedule.  Yet the statute's protection of religious practices "including but not limited to the observance of any particular . . . sabbath or holy day" indicates that its scope includes a bona fide claim of this type.  Mass. Gen. Laws ch. 151B § 4(1A) (emphasis added).  From this, we understand Chapter 151B's definition of undue hardship to be a non-exclusive list.

Such a reading is consistent with the phrasing of the undue hardship definition: the statute states that undue hardship "shall include" the factors specified.  Id.  This suggests an illustrative list, rather than an exhaustive one.  Massachusetts Supreme Judicial Court precedent supports this interpretation of Chapter 151B as well.  In New York & Massachusetts Motor Service,

-25-

the court discussed the appropriate standard for the Massachusetts Commission Against Discrimination to use in analyzing undue hardship. 401 Mass. at 575-79, 517 N.E.2d at 1275-78. In addition to the conditions specified in Chapter 151B, the court explained that an adjudicator "also must focus on whether the employer could have exercised its managerial discretion in such a way that the employee's religious obligations could have been reasonably accommodated." 401 Mass. at 576, 517 N.E.2d at 1276.

This instruction provides some guidance, but Massachusetts courts do not appear to have specifically considered whether exempting an employee from a dress code constitutes undue hardship. Where there are gaps in the application of Chapter 151B, courts turn to case law interpreting Title VII. Wheatley, 418 Mass. at 397, 636 N.E.2d at 268 ("It is our practice to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. c. 151B.").

We thus consider the question of undue hardship in light of both the Massachusetts Supreme Judicial Court's instruction in New York & Massachusetts Motor Service and the foregoing discussion of undue hardship under Title VII. Cloutier's insistence on a wholesale exemption from the no-facial-jewelry policy precludes Costco from using its managerial discretion to search for a reasonable accommodation. Exempting Cloutier from the dress code would have imposed more than a de minimis burden on Costco for the

-26-

reasons outlined above.  Her refusal to consider anything less means that Costco could not offer a reasonable accommodation without incurring an undue hardship.  For this reason, Cloutier's discrimination claim under Chapter 151B must fail.

**<u>Affirmed.</u>**