Therefore, defendants' separate motions to dismiss the complaint will be granted.

Separately, plaintiff moves the Court for a preliminary injunction to prevent defendants from "further interfering with the plans of construction of a cable television system in the City of St. Louis."

For the reasons stated above, plaintiff fails to state a claim upon which relief may be granted. Therefore, plaintiff's motion will be denied as moot.

EQUAL EMPLOYMENT
OPPORTUNITY
COMMISSION

v.

SAMBO'S OF GEORGIA, INC. and Sambo's Restaurants, Inc. d/b/a Sambo's and Sambo's Restaurant.

Civ. A. No. C80–1164A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 30, 1981.

Ellis L. Bert, Gary E. Trachten, Equal Employment Opportunity Commission, Atlanta, Ga., for plaintiff.

Hunter R. Hughes, III, John J. Almond, Rogers & Hardin, Atlanta, Ga., for defendants.

## ORDER OF COURT

MOYE, Chief Judge.

### I.  INTRODUCTION

This is an action brought by the Equal Employment Opportunity Commission (hereafter "EEOC") pursuant to §§ 706(f)(1), (3) and (g) of Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, alleging unlawful discrimination in employment on the part of the defendants Sambo's Restaurants, Inc. and Sambo's of Georgia, Inc. The action is brought on the basis of a charge filed with the EEOC by Mohan Singh Tucker, which charge complained that the defendants have violated Title VII by unlawfully rejecting Mr. Tucker's application for a position as restaurant manager with the defendants on the basis of Mr. Tucker's religion.

The EEOC contends that the defendants rejected Mr. Tucker's application for a restaurant manager position because Mr. Tucker was not in compliance and would not comply with the defendants' grooming and appearance standards, which include a prohibition as to facial hair on restaurant managerial personnel; that Mr. Tucker is forbidden by his religion, the Sikh religion, from shaving his facial hair; and that the defendants' rejection of Mr. Tucker's application on this basis, in the circumstances of this case, constitutes unlawful discrimination on the basis of religion, in violation of Title VII. The EEOC asks the Court to order the defendants to offer a restaurant manager position to Mr. Tucker or, in the alternative, to place Mr. Tucker back at the point in the application process at which he was previously rejected. The EEOC also seeks back pay on behalf of Mr. Tucker and asks the Court to enjoin the defendants' standards regarding grooming and facial hair.

This matter came on for trial before the Court, without a jury, on July 20 and 21, 1981. Having considered all the pleadings, evidence, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

1. Mohan S. Tucker is a sincere and practicing Sikh; that is to say, he believes in and practices the tenets of Sikhism.

2. Sikhism is a bona fide monotheistic religion with approximately 15 million followers internationally, some 300,000 of which reside in the United States. Sikhs are forbidden by their religion from cutting or shaving their facial hair, except in medical emergencies. This requirement of the wearing of facial hair, known as the *Kes* or *Kesha*, is an essential tenet of Sikhism. Sikhs are also required to wear a turban which covers and restrains the hair.

3. It is Mohan S. Tucker's practice, and the practice of many other (but not all) Sikhs, to part and wrap his beard around a string which is then tied under a turban.

4. Defendant Sambo's Restaurants, Inc. is a California corporation engaged in the restaurant business in the state of Georgia and in forty-six other states in the United States. At the time of the filing of this action, defendant Sambo's of Georgia, Inc., a Georgia corporation, was a wholly-owned subsidiary of Sambo's Restaurants, Inc. On or about January 1, 1981, however, Sambo's of Georgia, Inc. was merged into the parent corporation and ceased to exist.

5. On or about January 24, 1979, Mr. Tucker, who was then employed at a Pizza Hut Restaurant in the Atlanta area, made application to Sambo's Restaurants, Inc. for employment as a Sambo's restaurant manager. In response to a newspaper advertisement, Mr. Tucker visited the Regional Office of Sambo's Restaurants, Inc. in Marietta, Georgia to make his application.

Mr. Tucker filled out an application at the Regional Office and gave the application to Germaine Skoglund, who was a regional recruiter employed by Sambo's Restaurant, Inc. at that time. (Mrs. Skoglund is no longer employed by Sambo's Restaurants). In speaking with Mr. Tucker, Mrs. Skoglund observed that if accepted as a restaurant manager trainee, Mr. Tucker would be required to shave his beard, in accordance with Sambo's' grooming standards. Mr. Tucker responded that he was forbidden by his religion to shave his facial hair. Mrs. Skoglund responded that no exception from the grooming standards could be made on the basis of his religion, and that his application would be denied for that reason.

6. Mr. Tucker's application was denied at that point. No further interviewing or testing was conducted, and no further investigation, such as the checking of references, was made by Sambo's Restaurants, Inc. Sambo's Restaurants, Inc. rejected Mr. Tucker's application for the sole and actual reason that Mr. Tucker would not comply with Sambo's grooming standards. In rejecting Mr. Tucker's application, Sambo's Restaurants acted without any motive of intentionally discriminating against Mr. Tucker on the basis of his religion.

7. Less than 180 days after Mr. Tucker's application was rejected by Sambo's Restaurants, Mr. Tucker filed a charge of employment discrimination with the EEOC against the defendants. The EEOC assigned Charge No. 041791158 to that charge of discrimination, and served a notice of and copy of that charge upon the defendants at Sambo's Restaurants' corporate headquarters. The EEOC conducted an investigation of this charge, and on July 30, 1979, the District Director of the EEOC's Atlanta District Office issued a determination of reasonable cause to believe that the charge was true, and invited the parties to join the EEOC in the effort to conciliate the matter. Conciliation efforts were unsuccessful. By letter dated December 3, 1979, the District Director informed the defendants that the Commission had determined that its efforts to conciliate the charge had been unsuccessful.

8. Sambo's has established and maintained a uniform grooming policy for all of its 1100 restaurants which forbids its restaurant managers and other restaurant personnel to wear facial hair, with the exception of neatly-trimmed mustaches. The evidence adduced at trial did not establish with precision the date on which these grooming standards were first adopted. It appears, however, that the policy dates back to the opening of the very first Sambo's Restaurant in California in 1957. Sambo's has consistently and uniformly, over the years, enforced its grooming policy.

9. Sambo's requires that its restaurant managers be neatly groomed and that the managers not wear beards, long mustaches, or headwear because the wearing of a beard, a long mustache, or headwear does not comply with the public image that Sambo's has built up over the years. Grooming standards similar to Sambo's' are common in the restaurant industry. Exceptions to the grooming standards of Sambo's Restaurants would have an adverse effect on the Sambo's system as a whole and thus Sambo's has never knowingly permitted any exceptions.

10. Sambo's' grooming standards are also based on management's perception and experience that a significant segment of the consuming public (in the market aimed at and served by Sambo's) prefer restaurants whose managers and employees are clean-shaven. This perception is based on years of experience in the restaurant business, and its accuracy is borne out, without contradiction, by the evidence in this case.

Adverse customer reaction in this market to beards arises from a simple aversion to, or discomfort in dealing with, bearded people; from a concern that beards are unsanitary or conducive to unsanitary conditions; or, as Mr. Oscar Berninger testified, from a concern that a restaurant operated by a bearded manager might be lax in maintaining its standards as to cleanliness and hygiene in other regards. The EEOC put in some evidence as to practices in types of restaurants other than Sambo's, but the evidence shows, without contradiction, that the requirement of clean-shavenness is the norm in restaurants catering to the family trade and that such requirement is essential to attracting and holding customers in that market.

11. An additional basis for Sambo's Restaurants' policy is sanitation. It is beyond question that sanitation is a legitimate concern in the food service industry. A National Restaurant Association survey of consumer attitudes with respect to restaurants, the results of which survey are, in summary form, in evidence in this case, shows that cleanliness ranks as a consideration of utmost concern in the minds of the consuming public. The Court notes that

the Chief of the Environmental Sanitation Unit of the Georgia Department of Human Resources has issued "Guidelines for Effective Hair Restraints" for use by the Department's food sanitation survey officers in conducting food sanitation surveys, Item No. 4 of which states:

"Excessive growth of facial hair shall be considered a violation of the food service rules and regulations and will be debited on official surveys."

Rather than permit the wearing of facial hair and risk the violation of the foregoing guidelines (or similar rules or guidelines in other jurisdictions), and open itself up to claims related to its sanitation policies, Sambo's Restaurants has eliminated the risk of noncompliance in this regard by simply forbidding facial hair. This approach to the potential problem of noncompliance is reasonable and justifiable.

12. The evidence shows that relaxation of Sambo's grooming standards as to facial hair on restaurant managers—or exceptions from those standards—would impose an undue hardship on Sambo's in that doing so would adversely affect Sambo's public image and the operation of the affected restaurant or restaurants as a consequence of offending certain customers and diminishing the "clean cut" image of the restaurant and its personnel; would impose on Sambo's a risk of noncompliance with sanitation regulations that is avoided under the current policy; and would make more difficult the enforcement of grooming standards as to other restaurant employees and the maintenance of employee morale and efficiency. The Court finds that this hardship would be a significant cost to Sambo's Restaurants that is more than merely *de minimis.*

The requirement that Sambo's' restaurant managers be clean-shaven is tailored to actual business needs, has a manifest and demonstrable relation to job performance, and is necessary to the safe and efficient operation of Sambo's Restaurants.

13. The Court finds, furthermore, that the EEOC's demand that the defendants "accommodate" Mr. Tucker by permitting him to serve as a restaurant manager without trimming his facial hair at all is in fact not a demand for accommodation but a demand for outright exemption. Even assuming that Sambo's could lawfully be required to modify its grooming standards to permit closely-cropped facial hair, Mr. Tucker nevertheless could not comply. His religion would not permit him to trim his beard or mustache at all, nor would it permit him to cut his hair or dispense with the headwear that restrains and covers his uncut hair and beard.

### III. CONCLUSIONS OF LAW

1. The Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. §§ 451, 1343, and 1345.

2. All conditions precedent to the filing of this action have been satisfied.

3. Section 42 U.S.C. § 2000e–2(a)(1) provides in relevant part:

"It shall be unlawful employment practice for an employer—

(1) To fail or refuse to hire . . . any individual . . . because of such individual's . . . religion . . . ."

Section 701(j), 42 U.S.C. § 2000e(j), added by Congress in 1972, defines religion as follows:

"The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to *reasonably accommodate* to an employee's or prospective employee's religious observance or practice without *undue hardship on the conduct of* the employer's business."

(Emphasis added).

4. The Commission contends that the defendants violated Title VII by failing to "reasonably accommodate" Mr. Tucker's religious practices. The Court concludes otherwise. The statute requires an employer to make reasonable accommodation of religious practices *unless* the employer cannot do so "without undue hardship on the conduct of the employer's business." In this case, the defendants could not have accommodated Mr. Tucker's practices with-

out "undue hardship," as that term has been defined by the United States Supreme Court. Under the decision of the Supreme Court in *TWA v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977), undue hardship is present when the employer cannot make an accommodation without incurring a more than *de minimis* cost. As outlined in the Findings of Fact, the exemption of Mr. Tucker from the defendants' no-beard rule would involve significant costs to Sambo's Restaurants, Inc. that are certainly more than *de minimis*. *See, e.g., Cummins v. Parker Seal Co.*, 561 F.2d 658 (6th Cir. 1977) (reversing district court decision for the plaintiff and holding that undue hardship shown as to accommodation of plaintiff ex-employee who could not, for religious reasons, work from Friday sundown to Saturday sundown, where fellow employees forced to substitute for plaintiff complained about having to do so); *TWA v. Hardison, supra* (undue hardship found where employer would have incurred a cost of $150.00 in premium wages for a period of three months to arrange substitutes for employee who could not work on Saturday because of his religion).

■ 5. The EEOC contends that the defendants attempt to justify their policy on the basis of customer preference, and argues that customer preference is an insufficient justification or defense as a matter of law, citing *Diaz v. Pan American World Airways*, 442 F.2d 385 (5th Cir. 1971). The Court disagrees. Even assuming that the defendants' justification for the grooming standards amounted to nothing more than an appeal to customer preference, which is not the case, it is not the law that customer preference is an insufficient justification as a matter of law. In the case of *Woods v. Safeway Stores, Inc.*, 420 F.Supp. 35 (E.D. Va.1976), *aff'd.* 579 F.2d 43 (4th Cir. 1978), *cert. denied*, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486 (1978), the court ruled that customer preference for overall store hygiene and an appearance of cleanliness in the retail food industry makes employee grooming standards that forbid facial hair a business necessity. *Id.* at 43. The *Diaz* decision is not to the contrary. The *Diaz* case involved the defense of a bona fide occupational qualification, or B.F.O.Q., which is a defense to a claim of discrimination in the form of facially discriminatory job classification, such as the requirement that employees in a certain job be female or, conversely, male. This case involves no such facially discriminatory classification, such as in *Diaz* and, therefore, *Diaz* is not applicable.

■ The Court concludes that, even were this a case of religious discrimination (which it is not), clean-shavenness is a bona fide occupational qualification for a manager of a restaurant, such as those operated by Sambo's, that relies upon and appeals to the family trade. As Senators Clark and Case, the floor managers of the 1964 Civil Rights Bill in the Senate, stated in an "Interpretative Memorandum" that they presented to the Senate:

"This exception [the bona fide occupational qualification exception] is a limited right to discriminate on the basis of religion, sex, or national origin where the reason for the discrimination is a bona fide occupational qualification. *Examples of such legitimate discrimination would be the preference of a French restaurant for a French cook, the preference of a professional baseball team for male players, and the preference of a business which seeks the patronage of members of particular religious groups for a salesman of that religion . . . ."*

110 Cong. Record 7213 (emphasis added).

6. The defendants have challenged the application of § 701(j) as the EEOC would apply it in this case on the ground that such an application would violate the Establishment Clause of the First Amendment of the United States Constitution. Although the Court need not base its decision in this case on that ground, it is noteworthy that this Court has previously held § 701(j) unconstitutional in the context of a similar case involving a no-beard rule. *Isaac v. Butler's Shoe Corp.*, 511 F.Supp. 108 (N.D.Ga., 1980). Although § 701(j) has been upheld as applied to cases involving religious refusals to

pay union dues, *e.g., Nottelson v. Smith Steel Workers*, 643 F.2d 445, 25 FEP Cases 281 (7th Cir. 1981), this case differs in very important respects from those cases. In the union dues cases, accommodations can be made that do not favor one religion over others, or religion generally over nonreligion, in that accommodations are possible that involve substitute performance or burden on members of the affected religion. In this case, there is no conceivable accommodation other than exempting Mr. Tucker from the defendants' grooming standards, and such exemption or exception does not involve a substitute burden. Exemption in this case would be an outright preference. Were the Court required to reach the question, it would hold that § 701(j) may not constitutionally be applied to require the defendants to make an exception for Mr. Tucker from their grooming standards.

■ 7. The Commission has argued that the defendants made no effort to accommodate Mr. Tucker, and argues further that Title VII enjoins upon employers the requirement to make some effort to accommodate. The Commission cites the decisions of *Anderson v. General Dynamics*, 589 F.2d 397 (9th Cir. 1978) and *Burns v. Southern Pacific Transportation Co.*, 589 F.2d 403 (9th Cir. 1978), for the proposition that Mr. Tucker is entitled to relief because the defendants failed to make an effort to accommodate. The Court disagrees. All that the statute requires is that employers reasonably accommodate where possible without undue hardship. The Court has already found that no such accommodation is possible in this case. The statute affords no basis for a further, merely formal, requirement that some effort to accommodate be made. In this regard, the law as stated by the Sixth Circuit Court of Appeals in *McDaniel v. Essex International, Inc.*, 571 F.2d 338, 341 (6th Cir. 1978), is consistent with the language of the statute and is followed by the Court:

"Section 701(j) requires that a reasonable accommodation be made *or* a showing that to do so would work an undue hardship."

(Emphasis added). The defendants having shown that no reasonable accommodation can be made without undue hardship, they have sustained their burden under the statute.[1]

■ 8. The EEOC has also urged in this case that a violation of Title VII has been shown by application of the Title VII doctrine of "disparate impact." That doctrine, developed in cases of alleged racial discrimination and extended to cases of alleged sex discrimination, holds that a Title VII violation may be established by showing that an employment practice or policy has a disproportionately adverse effect on members of the protected class as compared with nonmembers of the protected class. Where a disparate impact is shown, the plaintiff can prevail without the necessity of showing intentional discrimination unless the defendant employer demonstrates that the practice or policy in question has a demonstrable relationship to the requirements of the job in question. *E.g. Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1977). This is the so-called "business necessity" defense.

■ The Court concludes, however, that the disparate impact doctrine is inapplicable in this case of alleged religious discrimination, and the Court is mindful that, as the Supreme Court has warned, "*Griggs* does not imply, and this Court has never held, that discrimination must always be inferred from [disproportionate impact on one group or another]." *City of Los Angeles Department of Water & Power v. Manhart*, 435 U.S. 702, 711 n. 20, 98 S.Ct. 1370, 1377 n.20, 55 L.Ed.2d 657 (1978). The disparate impact doctrine of Title VII had been in existence for some time, and had been recognized by the Supreme Court in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), well before the enact-

---

1. The Court also notes that the Commission's position on this point in this case is inconsistent with the Commission's own Guidelines on Discrimination Because of Religion, 29 C.F.R. Part 1605. *See* 29 C.F.R. § 1605.3(b)(3).

ment of the religious accommodation provision, § 701(j). The conclusion is ineluctable that Congress, in passing § 701(j), did not feel that the disparate impact doctrine applied to cases of religious discrimination. Had the disparate impact doctrine applied to cases of religious discrimination, § 701(j) would have been unnecessary.

█ Where, as in cases of this type, Congress has specially or separately treated a category of alleged employment discrimination and spelled out, by statute, the employer's defense or defenses, the courts are not free to impose special burdens on employers or otherwise to provide plaintiffs with alternative theories of recovery cumulative of the special statutory provision addressing the type of alleged discrimination at issue. Instructive in this regard is the recent decision of the United States Supreme Court in *County of Washington v. Gunther*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). In *Gunther*, the Supreme Court ruled that equal pay claims may be cognizable under Title VII, but made clear that the Bennett Amendment to Title VII has the effect of incorporating into Title VII, by reference, the affirmative defenses set out in the Equal Pay Act, one of which affirmative defenses precludes the application of the disparate impact theory. The Court, in *Gunther*, plainly indicates that the disparate impact doctrine of *Griggs v. Duke Power Co., supra*, is therefore inapplicable in Title VII cases alleging wage discrimination on the basis of sex. 452 U.S. at 170, 101 S.Ct. at 2248. So, here, the affirmative defense of inability to accommodate without more than *de minimis* cost is a complete defense to the EEOC's Title VII claim, and any disparate impact doctrine (other than that set forth in § 701(j) is inapplicable.

█ 9. Even if the disparate impact doctrine were applicable in this case, the EEOC would not be entitled to relief on that basis because the evidence fails to show that the defendants' grooming standards have a disparate impact on Sikhs or religions that similarly forbid the shaving of facial hair. The essence of proof of disparate impact is comparison—i.e., comparing the impact of the policy on, in this case, Sikhs with the impact of the policy on those who are not forbidden to shave for religious reasons. In this case the evidence before the Court is insufficient to make that comparison. While the impact on Sikhs and members of other religions having similar grooming rules is theoretically total, in the sense that all such members are forbidden to comply with grooming rules such as those of the defendants, the evidence does not show that the defendants' grooming standards had actual impact on anyone other than Mr. Tucker. In the absence of evidence that members of such religions (other than a single applicant) may be considered to be in the pool of potential applicants, the Court cannot conclude that the rule has an adverse impact on such persons. The evidence in this case is also defective, from the standpoint of assessing disparate impact, in that the evidence does not show that Sambo's' grooming standards do not have an adverse impact on persons other than Sikhs or similarly situated persons. Ms. Skoglund, a former Sambo's regional recruiter, testified that some bearded applicants were rejected who refused for purely personal, non-religious reasons to shave their beards. Conceivably, the defendants' grooming standards could have a significant impact on the employment opportunities of persons who, for nonreligious reasons, wear beards and refuse to shave. There being insufficient evidence before the Court on this matter, the Court concludes that disparate impact has not been shown. It is the burden of the plaintiff, in a disparate impact case, not only to show the impact of the rule or policy in question on members of the protected class, but also, for purposes of comparison, to adduce evidence as to the impact of the rule or policy on nonmembers of the protected class. *EEOC v. Greyhound Lines, Inc.*, 635 F.2d 188 (3rd Cir. 1980).

10. The plaintiff is entitled to no relief in this matter.

IT IS THEREFORE ORDERED:

(1) That judgment be and hereby is entered in favor of the defendants; and

(2) That the costs of this action be awarded to the defendants.