BOBBY T. BROWN vs. F.L. ROBERTS & CO., INC.

Hampshire. September 3, 2008. - December 2, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.[1]

*Employment,* Discrimination. *Anti-Discrimination Law,* Employment, Religious beliefs. *Practice, Civil,* Attorney's fees.

In a civil action alleging that a grooming policy at one of the defendant's businesses, which required that all employees who had customer contact be clean shaven, discriminated against the plaintiff due to his religion, the judge erred in granting summary judgment in favor of the defendant, where the plaintiff's initial request for an exemption did not relieve the defendant of its obligation under G. L. c. 151B, § 4 (1A), to provide a reasonable accommodation unless there was an undue hardship, and an exemption from a grooming policy could not constitute an undue hardship as a matter of law, as the demonstration of an undue hardship on the course of one's business is a factual inquiry [678-686]; and where the evidence presented was insufficient to demonstrate conclusively that all conceivable accommodations would impose an undue hardship on the course of the defendant's business [686-688].

In a civil action alleging that a grooming policy at one of the defendant's businesses, which required that all employees who had customer contact be clean shaven, discriminated against the plaintiff due to his religion, the judge properly denied the plaintiff's motion for summary judgment on the question whether working in an area of the business that did not have customer contact was a reasonable accommodation, where the issue was disputed. [688]

This court declined a request to award appellate attorney's fees and costs in an appeal from a summary judgment rendered in a civil action brought under G. L. c. 151B, where the request for such fees was premature. [688-689]

CIVIL ACTION commenced in the Superior Court Department on June 16, 2006.

The case was heard by *Bertha D. Josephson,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Joel Feldman* for the plaintiff.

[1] Justice Greaney participated in the deliberation on this case prior to his retirement.

*Claire L. Thompson* (*Rebecca L. Bouchard* with her) for the defendant.

*Beverly I. Ward,* for Massachusetts Commission Against Discrimination, amicus curiae, submitted a brief.

*Joel Eigerman, Sarah Wunsch, & Sara Smolik,* for American Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.

IRELAND, J. In June, 2006, the plaintiff filed a complaint in the Superior Court pursuant to G. L. c. 151B, § 4 (1A), claiming that a new grooming policy at one of the defendant's businesses, which required all employees who had customer contact to be clean shaven, discriminated against him due to his religion. The parties filed cross motions for summary judgment. A Superior Court judge concluded that, as a matter of law, an exemption from the grooming policy would constitute an undue hardship because the defendant had a right to control its public image. She granted the defendant's cross motion for summary judgment and denied the plaintiff's motion. The plaintiff appealed, and we granted his application for direct appellate review. Because the defendant did not engage in an interactive process to address the plaintiff's religious needs, it was the defendant's burden to prove conclusively that no other conceivable accommodation was possible without imposing an undue hardship. We conclude that, on the record before us, the defendant has not met its burden. Accordingly, we vacate the grant of summary judgment and remand the case for further proceedings consistent with this opinion.

1. *Statutory scheme.* General Laws c. 151B, § 4 (1A), provides, in relevant part:

> "It shall be unlawful discriminatory practice for an employer to impose upon an individual as a condition of obtaining or retaining employment any terms or conditions, compliance with which would require such individual to violate or [forgo] the practice of, his creed or religion as required by that creed or religion . . . and the employer shall make reasonable accommodation to the religious need of such individual. . . . 'Reasonable Accommodation', as used in this subsection shall mean such accom-

modation . . . as shall not cause undue hardship in the
conduct of the employer's business."

The statute sets out an important public policy interest in
prohibiting discrimination against individuals for their sincerely
held religious beliefs, *Pielech* v. *Massasoit Greyhound, Inc.*,
441 Mass. 188, 195 (2004), and mandates that its provisions
"be construed liberally for the accomplishment of its purposes."
G. L. c. 151B, § 9, first par. Nevertheless, the statute's undue
hardship provision balances the interests of employers with that
of religious employees. *Opinion of the Justices*, 423 Mass.
1244, 1247 (1996). The statute's nonexhaustive list defining
undue hardship "illustrates the types of accommodation that
constitute excessive interference with an employer's business
affairs." *Massachusetts Bay Transp. Auth.* v. *Massachusetts
Comm'n Against Discrimination*, 450 Mass. 327, 337 (2008)
*(MBTA)*.[2]

A three-part inquiry applies where an employee claims dis-
crimination based on religion. *New York & Mass. Motor Serv.,
Inc.* v. *Massachusetts Comm'n Against Discrimination*, 401
Mass. 566, 575-576 (1988). The employee bears the initial
burden of establishing a prima facie case that the employer
required the employee to violate a required religious practice.
*Id.* at 576. The employee also must "demonstrate that he or she
gave the employer the required notice of the religious obli-
gations." *Id.* If the employee makes this prima facie case, the
burden then shifts to the employer "to prove that accommoda-
tion of the [employee's] religious obligations would impose
. . . an undue hardship" pursuant to the statute. *Id.* In determin-
ing whether an employer has met its burden of proving undue
hardship, the focus is on the particular nature and operations of
its business. *Id.* Moreover, "[a]n employer's mere contention

[2]The statute defines "undue hardship" as "the inability of an employer to
provide services which are required by and in compliance with all federal and
state laws . . . or where the health or safety of the public would be unduly
compromised by the absence of such employee or employees, or where the
employee's presence is indispensable to the orderly transaction of business and
his or her work cannot be performed by another employee of substantially
similar qualifications during the period of absence, or where the employee's
presence is needed to alleviate an emergency situation." G. L. c. 151B,
§ 4 (1A).

that it could not reasonably accommodate an employee is insufficient . . . ." *MBTA, supra* at 336.

2. *Background.* On summary judgment, we view the facts and inferences drawn therefrom in the light most favorable to the nonmoving party. *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982), quoting *Hub Assocs.* v. *Goode*, 357 Mass. 449, 451 (1970).

The plaintiff worked in Hadley as a lube technician for a Jiffy Lube service station that was owned by the defendant (Jiffy Lube). The plaintiff worked on motor vehicles in the upper and lower bays. When he worked in the upper bay he also worked as a greeter, salesperson, and cashier.

In 2001, Richard Smith became the defendant's new vice-president in charge of Jiffy Lube. Smith avers that he hired a consultant to help him develop strategies to improve sales and attract new customers to Jiffy Lube. As a result, in January, 2002, Smith instituted a grooming policy that stated, "[C]ustomer-contact employees are expected to be clean-shaven with no facial hair . . . . Hair should be clean, combed, and neatly trimmed or arranged. Radical departures from conventional dress or personal grooming and hygiene standards are not permitted." Other businesses owned by the defendant, including a retail gasoline station and convenience store, a restaurant, and a car wash, did not implement similar policies.

The plaintiff is a practicing Rastafarian. His religion, to which he has adhered since 1991, does not permit him to shave or cut his hair. In light of the grooming policy, the plaintiff told Jiffy Lube's manager and assistant manager that he wished to maintain customer contact without having to shave or cut his hair. The plaintiff's concerns were communicated to Smith, who stated that if the plaintiff did not comply, he would be allowed to work only in the lower bay and could not have customer contact. The plaintiff also made his concerns known directly to Smith, who stated, according to the plaintiff, that he did not have time to check people's religions.

Once the policy was implemented, the plaintiff worked solely in the lower bay with no formal customer contact. The plaintiff remained a lube technician and received a merit pay increase in January, 2002. However, the plaintiff asserts that the working

conditions in the lower bay were significantly worse than the upper bay, including that it was much colder in the winter, and more dangerous.[3] Because he was the sole lower bay employee on his shift, he could not take breaks and "many times" was the "last person at lunch." There was no alternative to working in the lower bay if he wanted to keep his job. He also states that he saw many lube technicians who had grease on them when they had customer contact. The plaintiff ceased working for Jiffy Lube in May, 2002, which, according to the judge, was for reasons unrelated to the litigation.

3. *Discussion.* Summary judgment is appropriate where there are no genuine issues of material fact and the record before the court entitles the moving party to judgment as a matter of law. *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994).

In her written memorandum of decision, the judge stated that the sincerity of the plaintiff's religious beliefs are not disputed by the defendant and that the plaintiff did inform the defendant of the requirements of his religion. The judge also concluded that the change in the plaintiff's job responsibilities was substantial enough for the plaintiff to meet his burden to show a prima facie case of discrimination due to his religion. The judge did not discuss directly whether the job change itself was a reasonable accommodation. Rather, the judge addressed the issue of undue hardship, focusing on "whether the employer could have exercised its managerial discretion in such a way that the employee's religious obligations could have been reasonably accommodated." *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination, supra* at 576.

The judge noted that no Massachusetts case has addressed the employer's burden of proof of undue hardship where grooming policies were the basis of a religious discrimination claim under G. L. c. 151B, § 4 (1A). Therefore she relied on *Cloutier* v. *Costco Wholesale Corp.*, 390 F.3d 126, 138 (1st Cir. 2004), cert. denied, 545 U.S. 1131 (2005) (*Cloutier*), where the United States Court of Appeals for the First Circuit addressed undue hardship and a grooming policy pursuant to Title VII of the

---

[3]He states that one was more likely to be burned by oil in the lower bay and that he often hurt his knuckles and hit his head on a pipe.

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2000) (Title VII), as well as under G. L. c. 151B.[4] As the judge discussed in her decision, *Cloutier* involved an employee who claimed that the policy of the employer in that case, banning facial piercings for employees who interacted with customers, violated her religious beliefs. The court held that an outright exemption to the grooming policy was an undue hardship as a matter of law. *Id.* at 136. Noting that "employees reflect on their employers," the court stated that other courts have "upheld dress code policies that . . . are designed to appeal to customer preference or to promote a professional image." *Id.* at 135, 136. Applying these principles, the court concluded that allowing that employee the outright exemption she requested would deny the employer the ability to demand compliance and to control its public image. *Id.* at 137. In the absence of a Massachusetts case on which it could rely, the court also applied these principles to the plaintiff's G. L. c. 151B claim. *Id.* at 137-138.

Here, the judge concluded that, like in *Cloutier*, the plaintiff was asking for an exemption from the grooming policy, and thus the defendant was entitled to summary judgment as a matter of law.[5]

a. *Undue hardship.* We note that, in their briefs to this court, the parties focus solely on the undue hardship issue that was the basis for the judge's summary judgment decision.[6]

---

[4]Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2000) (Title VII), makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of religion, 42 U.S.C. § 2000e-2(a)(1), and states that an employer must demonstrate "that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without an undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

[5]The plaintiff's case was first heard in Federal court. *Brown* v. *F.L. Roberts & Co.*, 419 F. Supp. 2d 7 (D. Mass. 2006). The Federal judge granted summary judgment for the defendant on the plaintiff's claim filed pursuant to Title VII, *id.* at 15-19, in light of the holding in *Cloutier* v. *Costco Wholesale Corp.*, 390 F.3d 126 (1st Cir. 2004), cert. denied, 545 U.S. 1131 (2005) (*Cloutier*), but expressed reservations concerning the reasoning of the *Cloutier* case. The judge dismissed, without prejudice, the plaintiff's claim pursuant to G. L. c. 151B, § 4 (1A), stating that "it is possible in this case that state law may be more generous to Plaintiff than federal law." *Brown* v. *F.L. Roberts & Co., supra* at 19.

[6]The defendant reserves the right to raise at trial whether its offer to have

The defendant argues, in essence, that the judge properly granted its motion for summary judgment because *Cloutier* is applicable to G. L. c. 151B, § 4 (1A). It also claims that, if this court concludes that proof of undue hardship is required, on this record, it has presented sufficient evidence. We consider each contention in turn.

i. The defendant contends that, as a matter of law, it was not required to engage in an interactive process to find a reasonable accommodation for the plaintiff because, like the plaintiff in *Cloutier*, he requested an exemption from the grooming policy and thus "foreclosed Jiffy Lube's ability to exercise its managerial discretion is such a way as to reasonably accommodate [him]."

We apply Federal case law that construes Federal antidiscrimination statutes in interpreting G. L. c. 151B, *Wheatley* v. *American Tel. & Tel. Co.*, *supra* at 397, but "such interpretations are not binding on a State court construing its own State statute." *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 167 (1978). Indeed, "[i]n construing G. L. c. 151B, we frequently do not follow the reasoning of Federal appellate decisions applying Title VII . . . for several reasons [including] the existence of material differences [in the two statutory schemes, and] the legislative directive that G. L. c. 151B is to be applied liberally." *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 537 (2001). See *id.* at 536-539, and cases cited (rejecting case of United States Court of Appeals for First Circuit interpreting continuing violation doctrine in sexual harassment). For the reasons that follow, we decline to apply *Cloutier* to G. L. c. 151B, § 4 (1A).

We begin with a more detailed discussion of the facts in *Cloutier*. There, the employee maintained that it was against her religion not to show her facial piercings and thus she could not

---

the plaintiff work in the lower bay was a reasonable accommodation and whether the plaintiff established a prima facie case of discrimination. We also note that the plaintiff claims that the judge, in her decision, definitively found that he met his burden of establishing a prima facie case of discrimination. This claim has no merit because the judge is not the trier of fact at this stage of the proceedings.

follow the employer's grooming policy. *Cloutier, supra* at 129.[7]
The employee first offered the employer the option of her cover-
ing her piercings with bandages. The employer refused. *Id.*
After mediation through the Equal Employment Opportunity
Commission (EEOC), the employer ultimately offered the em-
ployee two alternative accommodations: her own suggestion of
bandages or substituting, during working hours, clear retainers
for her facial piercings. *Id.* at 130. It was only then that the
employee claimed that neither accommodation was adequate.[8]

[7]The court expressed skepticism concerning the sincerity of that employee's
religious beliefs but assumed they were sincere given the procedural posture
of the case: review of the grant of a motion for summary judgment. *Cloutier,
supra* at 132 n.6 (noting that employee's assertions of what her beliefs required
changed over time).

[8]In reaching its conclusion that exemptions from grooming practices are an
undue hardship as a matter of law, *Cloutier, supra* at 135-136, relied on cases
where employees rejected offers of accommodation or the sincerity of a
claimed religious belief was questionable. These cases also are distinguishable
from the facts in this case. See *Daniels* v. *Arlington*, 246 F.3d 500, 501, 506
(5th Cir.), cert. denied, 534 U.S. 951 (2001) (dismissing Title VII claim where
police officer did not respond to police department's offers to accommodate
his desire to wear religious pin on his uniform; police department cannot have
officers deciding what to wear on their uniforms); *Wilson* v. *U.S. W. Com-
munications*, 58 F.3d 1337, 1339-1342 (8th Cir. 1995) (company's offer to
religious employee that she could wear her antiabortion button as long as she
covered it when she left her cubicle a reasonable accommodation that she
refused to accept; it was unnecessary to analyze undue hardship but evidence
that productivity declined forty per cent because other employees felt harassed
by her button); *Hussein* v. *Waldorf-Astoria*, 134 F. Supp. 2d 591, 596-598
(S.D.N.Y. 2001), aff'd by unpublished opinion, 31 Fed. Appx. 740 (2d Cir.
2002) (no Title VII claim for plaintiff who had history of insubordination and
had been serving suspension before showing up with prohibited beard, where
employee gave no notice to employer of his beliefs and employer was justi-
fied in doubting sincerity of religious beliefs).

The other cases on which *Cloutier* relies concern religious accommodation
and grooming policies because of safety or sanitation issues. In *Bhatia* v.
*Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984), there was a "no
beard" policy for employees who could be exposed to toxic gas and thus need
an airtight seal on safety masks. An exemption would have violated California
occupational safety and health administration standards. In *EEOC* v. *Sambo's
of Ga., Inc.*, 530 F. Supp. 86, 89-90 (N.D. Ga. 1981), studies of the relevant
market showed a relationship between a clean-shaven grooming policy and
customer perception of the sanitary conditions in a restaurant, and employees
with excessive growth of facial hair would violate guidelines of the sanitation
unit of the Georgia Department of Human Resources. Despite this, the Federal
District Court concluded that simple customer preference is sufficient for any

*Id.* Thus, the employer engaged in a search for a reasonable accommodation, albeit after an initial refusal that prompted EEOC intervention.

Here, unlike in *Cloutier,* because the defendant did not discuss alternatives with the plaintiff, the defendant cannot show conclusively, on this record, that a total exemption from the grooming policy was the only possible accommodation. Indeed, in his supplemental affidavit, the plaintiff asserts that he never said that he would not have considered suggestions by Jiffy Lube for an accommodation other than a complete exemption and that he, in fact, would have considered other alternatives had they been offered. The defendant's reliance on the facts in *Cloutier* is misplaced.

In any event, G. L. c. 151B, § 4 (1A), *requires* an employer to provide a reasonable accommodation unless there is an undue hardship. We conclude that the plaintiff's initial request for an exemption did not relieve the defendant of this obligation. All that was required of this plaintiff, initially, was that he make clear to Jiffy Lube that there was a conflict between the grooming policy and his religion. The specific content of the plaintiff's initial communication of that conflict is irrelevant.[9] See *Ocean Spray Cranberries, Inc.* v. *Massachusetts Comm'n Against Discrimination,* 441 Mass. 632, 644 (2004), quoting *Russell* v. *Cooley Dickinson Hosp., Inc.,* 437 Mass. 443, 457 (2002)

grooming policy. *Id.* at 91. *Woods* v. *Safeway Stores, Inc.,* 420 F. Supp. 35, 42-43 (E.D. Va. 1976), aff'd, 579 F.2d 43 (4th Cir. 1978), cert. denied, 440 U.S. 930 (1979), did not involve a religious accommodation issue. The court held that because the plaintiff worked in a grocery store, the store had a legitimate business interest in maintaining proper cleanliness and hygiene to cater to customer preferences.

[9] In other religious discrimination cases that this court has considered, albeit where grooming policies were not at issue, plaintiffs initially requested an exemption from an employment policy. See, e.g., *Massachusetts Bay Transp. Auth.* v. *Massachusetts Comm'n Against Discrimination,* 450 Mass. 327, 330-331 (2008) (*MBTA*) (exemption from working on Friday evenings); *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination,* 401 Mass. 566, 569 (1988) (same). Moreover, an exemption has been considered an accommodation. *MBTA, supra* at 340 n.14, quoting *EEOC* v. *Ithaca Indus.,* 849 F.2d 116, 118 (4th Cir.), cert. denied, 488 U.S. 924 (1988). See *EEOC* v. *Alamo Rent-A-Car LLC,* 432 F. Supp. 2d 1006, 1013 (D. Ariz. 2006) (employer must prove undue hardship where it prohibited Muslim woman from wearing head covering while dealing with customers during Ramadan).

(employee's initial request for accommodation of disability triggers employer's obligation to participate in process to find possible accommodation). To hold otherwise would shift the statutory burden entirely to the employee, eviscerating the statutory requirement that an employer provide a reasonable accommodation. See *MBTA, supra* at 341 ("If merely looking into an accommodation . . . were to be considered too great an interference with an employer's business conduct, then employers would effectively be relieved of all obligation under [the statute]"). See generally *Anderson* v. *General Dynamics Convair Aerospace Div.*, 589 F.2d 397, 401 (9th Cir. 1978), cert. denied sub nom. *International Ass'n of Machinists & Aerospace Workers* v. *Anderson*, 442 U.S. 921 (1979) (under Title VII, shortcomings in employee's initial suggestion for accommodation did not relieve union and employer of burden to undertake initial steps to accommodate employee's religious beliefs). In addition, in purely practical terms, the employer is in as good, if not better, position to determine possible accommodations.[10]

We also conclude that an exemption from a grooming policy cannot constitute an undue hardship as a matter of law. Our cases have interpreted the statute to mean that an employer has the burden to *prove* undue hardship. *MBTA, supra* at 336, quoting *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination, supra* at 576. In the absence of a search for a reasonable accommodation, an employer is required to "conclusively demonstrate that all conceivable accommodations would impose an undue hardship on the *course of its business*" (emphasis added). *MBTA, supra* at 342. Such a demonstration is a factual inquiry. *Id.* at 338-339 (examining whether voluntary employee swaps would have constituted undue hardship); *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Comm'n Against Discrimination, supra* at 571, 576 (engaging in factual inquiry into specific nature and operations of employer's business; assessing whether employer could have exercised its managerial discretion to accommodate religious beliefs without undue hardship). Blanket assertions that an employee's "demand for relief"

---

[10]For example, in their briefs, the parties discuss whether the plaintiff could have been encouraged to apply for a position in one of the defendant's other businesses that did not require employees to be clean shaven.

is unreasonable is not enough. *MBTA, supra* at 340. See *Cloutier, supra* at 135, quoting *Draper* v. *United States Pipe & Foundry Co.,* 527 F.2d 515, 520 (6th Cir. 1975) (courts skeptical of hypothetical hardship claims).

In addition, unlike Title VII, G. L. c. 151B, § 4 (1A), contains a list of specific examples of undue hardship that, although not exhaustive, provides guidance for the "types of accommodation that constitute excessive interference with an employer's business affairs." *MBTA, supra* at 337. The Legislature presumably was mindful of the types of accommodations employees with certain religious practices and beliefs would request and made no specific exception in the statute for grooming policies. Moreover, the statute's list of circumstances that constitute undue hardship (i.e., the inability to provide services, a compromise of the health and safety of the public, the presence of an employee being indispensable or needed to alleviate an emergency) are situations that have an important impact on an employer's business. Such an impact cannot be shown by "mere contention" of its inability to accommodate. *Id.* at 336. Indeed, even in *Trans World Airlines, Inc.* v. *Hardison,* 432 U.S. 63, 77-82, 84-85 (1977), where the United States Supreme Court held that, under Title VII, unless an' employer's burden is de minimis, there is no duty to accommodate a religious belief, the Court considered the nature and operation of the employer's business, job duties, and efforts at accommodation before it concluded that the employee's request was an undue burden. Compare *Balint* v. *Carson City,* 180 F.3d 1047, 1049, 1053-1054 (9th Cir. 1999) (no undue hardship as matter of law where employer made no attempt to accommodate plaintiff's request for exemption from working on his Sabbath; seniority system with potential for preventing accommodation did not relieve employer of obligation to attempt accommodation), with *Weber* v. *Roadway Express, Inc.,* 199 F.3d 270, 272, 274-275 (5th Cir. 2000) (undue hardship where employer proved that religious man's request that he not be partnered with woman on overnight driving runs would impact female drivers).

The defendant argues that a claim of the noneconomic costs concerning public image should be sufficient to demonstrate undue hardship. It asserts, without citation to any authority, that to hold otherwise would be to impose a burden that is impossible

for businesses to meet. We see no reason to make an exception to this well-established regime for a grooming policy. To do so would upset the balance between employer interests and employee needs that is built into the statute. That balance is especially important because, as the Federal judge in the plaintiff's Title VII case stated, reading *Cloutier*'s approval of public image broadly:

> "One has to wonder how often an employer will be inclined to cite this expansive language to terminate or restrict from customer contact, on image grounds, an employee wearing a yarmulke, a veil, or the mark on the forehead that denotes Ash Wednesday for many Catholics. More likely, and more ominously, considerations of 'public image' might persuade an employer to tolerate the religious practices of predominant groups, while arguing 'undue hardship' and 'image' in forbidding practices that are less widespread or well known."

*Brown* v. *F.L. Roberts & Co.*, 419 F. Supp. 2d 7, 17 (D. Mass. 2006).[11] Requiring proof of undue hardship protects against the misuse of "public image," and is consistent with the requirement that the statute be construed liberally to accomplish its ends. G. L. c. 151B, § 9, first par.

Finally, although EEOC regulations are not entitled to "any particular deference," *Modern Cont./Obayashi* v. *Massachusetts Comm'n Against Discrimination*, 445 Mass. 96, 107 (2005), we note our conclusion that an exemption from a grooming policy is not an undue hardship as a matter of law comports with an EEOC Compliance Manual that contradicts *Cloutier*:

> "When an employer has a dress or grooming policy that conflicts with an employee's religious beliefs or practices, the employee may ask for an exception to the

---

[11]We leave to another day whether or to what degree customer preference could allow an employer to discriminate based on religion. But see 804 Code Mass. Regs. § 3.00 (1995) (customer or coworker preference is not bona fide occupational qualification). See also *Sarni Original Dry Cleaners, Inc.* v. *Cooke*, 388 Mass. 611, 617 (1983), quoting *Diaz* v. *Pan Am. World Airways*, 442 F.2d 385, 388, 389 (5th Cir.), cert. denied, 404 U.S. 950 (1971) (declining to address whether prejudices of third party could ever legitimize bona fide occupational qualification).

policy as a reasonable accommodation. Religious groom-
ing practices may relate, for example, to shaving or hair
length. Religious dress may include clothes, head or face
coverings, jewelry, or other items. Absent undue hardship,
religious discrimination may be found where an employer
fails to accommodate the employee's religious dress or
grooming practices.

.   "  . . .

*"Some courts have concluded that it would pose an
undue hardship if an employer was required to accom-
modate a religious dress or grooming practice that conflicts
with the public image the employer wishes to convey to
customers. While there may be circumstances in which al-
lowing a particular exception to an employer's dress and
grooming policy would pose an undue hardship, an
employer's reliance on the broad rubric of 'image' to deny
a requested religious accommodation may in a given case
be tantamount to reliance on customer religious bias (so-
called 'customer preference') in violation of Title VII"*[12]

(emphasis added). EEOC Compliance Manual, Directives Trans-
mittal No. 915.003, Section 12, Religious Discrimination (July
22, 2008).

ii. We now turn to the defendant's contention that it has
provided sufficient proof of undue hardship in this case. In his

---

[12]This policy is consistent with another EEOC publication issued in light of
an increase in the number of charges of workplace discrimination in the wake
of the attacks of September 11, 2001. See Questions and Answers about the
Workplace Rights of Muslims, Arabs, South Asians, and Sikhs under the
Equal Employment Opportunity Laws (as modified through May 14, 2002)
("If a turban is religiously-mandated, you should ask your employer for a
religious accommodation to wear it at work. Your employer has a legal obliga-
tion to grant your request if it does not impose a burden or an 'undue hard-
ship' . . .").

EEOC guidelines and compliance manuals are not accorded the same weight
as regulations, *General Elec. Co.* v. *Gilbert,* 429 U.S. 125, 141-142 (1976),
but they may be used for guidance, and "[t]he weight of such a judgment in a
particular case will depend upon the thoroughness evident in its consideration,
the validity of its reasoning, its consistency with earlier and later pronounce-
ments, and all those factors which give it the power to persuade . . . ." *Id.* at
142, quoting *Skidmore* v. *Swift & Co.,* 323 U.S. 134, 140 (1944). See *Kentucky
Retirement Sys.* v. *EEOC,* 128 S. Ct. 2361, 2371 (2008); *Cuddyer* v. *Stop &
Shop Supermarket Co.,* 434 Mass. 521, 536 n.18 (2001).

affidavit, Smith states that a consultant "presented research and statistical data indicating that retail establishments with a 'clean shaven Personal Appearance Policy' are more successful than those without such a policy because a significant segment of the consuming public prefers to interact with retail employees who have a more conventional appearance. [The consultant] stated that Jiffy Lube needed to 'make some drastic changes,' including adopting a clean shavenness policy to attract and maintain customers in the retail market."[13] The defendant did not submit any other evidence to support these hearsay statements. In a deposition, Smith stated that Jiffy Lube sales increased after the grooming policy was instituted. He also stated that, in the year and one-half before his deposition, Jiffy Lube received between 3,000 and 4,000 customer comment cards; approximately one-half included handwritten comments, and between five and eight of those cards had comments about facial hair. In addition, managers told him of a "[c]ouple" of spontaneous customer comments about the grooming policy and another two customers, who were among those telephoned by Jiffy Lube for comments, mentioned facial hair. However, the increase in revenues Jiffy Lube experienced could not be directly attributed to the grooming policy because it was part of a new sales model.

For summary judgment purposes, this evidence is insufficient for the defendant to "conclusively demonstrate that all conceivable accommodations would impose an undue hardship on the course of its business." *MBTA, supra* at 342. The statements from the consultant are inadmissible hearsay.[14] *Symmons* v. *O'Keeffe,*

---

[13]In a deposition, Smith stated that the study was not specific to businesses like Jiffy Lube.

[14]In his opposition to the defendant's statement of material facts, the plaintiff objected to the consultant's statement contained in Smith's affidavit as inadmissible hearsay. In its brief, the defendant makes two arguments about the admissibility of the consultant's statements. It claims that the statements are not being used for the truth of the matter but instead go to Smith's state of mind that a declaration was made. It also points out that the plaintiff does not dispute that, because of what the consultant told Smith, the grooming policy was implemented, and argues that evidence supporting the consultant's statements to Smith is, therefore, "redundant." It is not clear how Smith's state of mind or the plaintiff's agreement that Smith talked to a consultant assists the defendant in meeting its burden of proving that an accommodation would constitute an undue hardship for Jiffy Lube. Moreover, this is inadmissible multilevel hearsay.

419 Mass. 288, 295 (1995), and cases cited. Assuming, arguendo, that the other information concerning Jiffy Lube's increased profitability is admissible, the defendant has not shown, on this record, that it was caused by the grooming policy. See e.g., *Banks* v. *Service Am. Corp.*, 952 F. Supp. 703, 705, 710 (D. Kan. 1996), and cases cited (no undue hardship shown concerning accommodating employees' religious exclamations to customers where only twenty to thirty complaints from customers over three-month period in business that served 2,000 to 3,000 people per day). See also *Cloutier, supra* at 135, quoting *Draper* v. *United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975) (courts skeptical of hypothetical hardship). On this record, therefore, the defendant is not entitled to summary judgment.

b. *Reasonable accommodation.* The plaintiff argues that we should vacate the judgment of the Superior Court on the cross motions for summary judgment, grant his motion, and deny the defendant's. He argues that, because working in the lower bay was part of the grooming policy itself, it could not be considered a reasonable accommodation. However, the defendant contends that working in the lower bay was an accommodation and reserved the right to address this issue at trial. See note 6, *supra.* In addition, Smith states in his affidavit that the job responsibilities in the upper and lower bay are virtually identical. Because the material fact whether working in the lower bay was a reasonable accommodation for purposes of G. L. c. 151B, § 4 (1A), is disputed, summary judgment is inappropriate. The issue needs to be resolved by the trier of fact, as we cannot say, on this record, that no reasonable jury could conclude that working in the lower bay was not a reasonable accommodation. See generally *MBTA, supra* at 335-336; EEOC *vs.* Aldi, Inc., U.S. Dist. Ct., No. 06-01210 (W.D. Pa. 2008), and cases cited (discussing whether reasonable accommodation could be found in preexisting employee rotation system).

4. *Attorney's fees.* In keeping with the procedural requirements of *Fabre* v. *Walton*, 441 Mass. 9, 10 (2004), the plaintiff has requested that he be awarded his appellate attorney's fees and costs. The defendant did not address the issue.

The plaintiff has not pointed to any statutory or other basis for his claimed present entitlement to attorney's fees. We have

not previously addressed the issue of an interlocutory award of appellate attorney's fees under G. L. c. 151B. In *T & D Video, Inc.* v. *Revere*, 450 Mass. 107, 115 n.21 (2007), we rejected the application of *Buckhannon Bd. & Care Home, Inc.* v. *West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001) (*Buckhannon*), and its progeny to fee requests under Massachusetts fee-shifting statutes or other Massachusetts authority.[15] It would appear that in connection with claims asserted under the cognate Federal statutes prior to the United States Supreme Court's decision in *Buckhannon*, a request for attorney's fees in circumstances similar to this appeal would have been denied as premature. See, e.g., *Skip Kirchdorfer, Inc.* v. *United States*, 803 F.2d 711, 712 (Fed. Cir. 1986) (although appellate court overturned both trial court's grant of summary judgment for defendant and its denial of plaintiff's motion for partial summary judgment, "where the tribunal on remand must determine a significant part of the case," request for fees under statute before judgment on remand "is generally premature").

5. *Conclusion.* We vacate the grant of summary judgment for the defendant and remand the case for further proceedings consistent with this opinion. The plaintiff's request for appellate attorney's fees is denied without prejudice as premature.

*So ordered.*

---

[15]In *Buckhannon Bd. & Care Home, Inc.* v. *West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001), the United States Supreme Court held that a "prevailing party" entitled to attorney's fees under 42 U.S.C. § 1988(b) is one who obtains "judicially sanctioned change in the legal relationship of the parties."